58 So.2d 638

**CARLISLE v. STATE.**

**7 Div. 122.**

Court of Appeals of Alabama.

Aug. 21, 1951.

Rehearing Denied Oct. 2, 1951.

242

W. A. Weaver, W. T. Starnes, and H. E. Holladay, all of Pell City, and Norman Moon, Birmingham, for appellant.

Si Garrett, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen., for the State.

PRICE, Judge.

This appeal is from a judgment of conviction of manslaughter in the first degree under an indictment charging second degree murder. Appellant was sentenced to imprisonment in the penitentiary for a term of five years.

The proof for the State tended to show that defendant, with four companions, entered into a conspiracy to administer some form of violence to Charlie Hurst. In pursuance of that agreement they met on the night of February 22, 1950, and proceeded in one automobile to the home of the victim and summoned him outside. In carrying out the conspiracy, and as a result thereof, the said Charlie Hurst was killed.

The first ruling of the court complained of as error by the defendant was in permitting Howard Hurst to testify that his father, the deceased, stated about two minutes before the killing that when he walked out on the porch the men in the automobile pulled their hats down over their eyes and acted to him like the Ku Klux.

The insistence of the defendant being that such evidence was not within the res gestae of the killing. The rule is acts or declarations are admissible as part of the res gestae if they are substantially contemporaneous with the main fact under consideration and so closely connected with it as to illustrate its character. Johnson v. State, 94 Ala. 35, 10 So. 667, 668; Welch v. State, 28 Ala.App. 273, 183 So. 879.

In the case of Brown v. State, 249 Ala. 5, 31 So.2d 681, 682, the Supreme Court, reversing the Court of Appeals, held that a telephone conversation in which deceased detailed to the Sheriff the actions of defendant, who was in front of deceased's restaurant, was within the res gestae of the killing "substantially contemporaneous with the main fact under consideration, and so closely connected with it as to illustrate its character."

Moreover, objection was not interposed until after the question was answered, and came too late. Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692, certiorari denied 250 Ala. 409, 34 So.2d 700; Cauley v. State, 33 Ala.App. 557, 36 So.2d 347, certiorari denied 251 Ala. 163, 36 So.2d 354; Turner v. State, 34 Ala.App. 456, 41 So.2d 301; Kelley v. State, 32 Ala.App. 408, 26 So.2d 633; 6 Ala.Digest, Criminal Law, ☞693.

Also, the same fact was brought out by questions propounded by defendant on cross examination of Billy Hurst.

Appellant lays great stress in his argument that the court committed error in admitting other evidence with reference to the Ku Klux Klan and insists such evidence was highly prejudicial to defendant because of the ill repute in which the Klan is now held in that community.

In laying a foundation to establish a conspiracy the State is given a wide range in the introduction of evidence, and any fact or circumstance tending to show a concurring agreement to carry into effect a common purpose to commit the crime is relevant and admissible. Lancaster v.

State, 21 Ala.App. 140, 106 So. 609; Clayton v. State, 23 Ala.App. 150, 123 So. 250; Cline v. State, 25 Ala.App. 433, 148 So. 172.

It was competent, as preliminary proof of conspiracy, for State witness Roe to testify that certain of the alleged conspirators were members of the Pell City Ku Klux Klan. Clayton v. State, supra, Lancaster v. State, supra. Objections to questions concerning membership of witness and defendant in the Klan came after the questions were answered, and were too late. See 6 Ala.Digest, Criminal Law, ☞693, and authorities supra.

In overruling defendant's objections to this line of questioning, the court stated if the evidence was not connected up it would be excluded from the jury. Appellant asserts as error the court's failure to later exclude this evidence. The record discloses no further ruling was requested of the court in this regard.

This evidence was made relevant by the testimony of the witness Allen that defendant stated while in jail that he was at a Ku Klux Klan meeting a night or two before the killing and that Luker and Wilson were with him, and by defendant's written confession in which he named Luker as the driver of the automobile and Wilson as the man who called deceased to the door. There was also evidence that one of the car windows was broken by bullets from deceased's rifle, and that the glass was replaced that night at the request of Luker and Roy Heath.

No harm resulted to defendant from the overruling of the objection to the question as to whether defendant was a member of any committee in the Klan. The question was not answered by the witness. See 7 Ala.Digest, Criminal Law, ☞1170½ (3).

Defendant's written confession was allowed in evidence upon proper predicate, and after testimony was introduced by defendant on the question as to whether the confession was prima facie voluntary or involuntary. In the confession defendant admitted there was an agreement to "go after" Hurst, but that Roy Heath, a coconspirator, since deceased, fired the fatal shots.

On that question the law is well settled that "when two or more persons enter upon an unlawful enterprise with a common purpose to aid, assist, advise, or encourage each other in whatever may grow out of the enterprise upon which they enter, each is responsible civilly and criminally for everything which may consequently and proximately result from such unlawful purpose, whether specifically contemplated or not, and whether actually perpetrated by all or less than all of the conspirators." Martin v. State, 89 Ala. 115, 8 So. 23, 24; Cleveland v. State, 20 Ala.App. 426, 103 So. 707, 709.

Clearly, under the evidence in the case, the defendant was not entitled to the affirmative charge.

Those charges refused to defendant which asserted correct propositions of law were fairly and substantially covered by the court's oral charge and by the given charges.

There being no error in the record, the judgment of conviction is affirmed.

Affirmed.

### On Rehearing.

Counsel for appellant earnestly complains in his application for rehearing that we were in error in holding that objection came too late to the testimony of Howard Hurst concerning statements made by his father as to the actions of the men in the automobile. In order to insure a full and complete review of this question by the Supreme Court, we set out herein the testimony complained of:

"Q. Howard, did you hear anything before you went in your house from the back yard? A. No, sir, I didn't hear nothing.

"Q. What happened when you got on the inside of the house, if anything? A. Well, I just went on in the house, and my daddy was in the house, and he was putting his shoes on, and he told me he didn't know who they was, and said when he walked out on the porch

they pulled their hat down, over their eyes, and they acted like Ku Klux to him—

"Mr. Weaver: We object to that. That they 'acted like the Ku Klux,' wouldn't mean anything.

"The Court: I overrule the objection for the present. Of course, if it wasn't part of the res gestae, I would exclude it.

"Mr. Weaver: We except.

"The Court: Go ahead.

"Q. Did your daddy then go outside, or remain in there? A. Well, as quick at he could get his shoes on, he went out."

Application overruled.