**George KINDER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 11, 1955.

Rehearing Denied June 24, 1955.

See also, Ky., 269 S.W.2d 212.

H. Clay Kauffman, Cecil C. Sanders, Lancaster, Stuard Wegener, Covington, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

WADDILL, Commissioner.

The appellant, George Kinder, was jointly indicted with Willard Sprinkles and others by the Pulaski County Grand Jury for the murder of James Jasper. By agreement, there was a change of venue to the Garrard Circuit Court. On his separate trial Kinder was convicted of voluntary manslaughter and sentenced to 14 years in prison. On this appeal Kinder insists the court erred (1) in overruling his motion for a directed verdict of acquittal; (2) in overruling his motion for a subpoena duces tecum; and (3) in giving erroneous and prejudicial instructions to the jury.

As is usual and proper where the proof of the charge rests on circumstantial evidence, the testimony covered a broad range. We summarize it in considering the contention that the evidence was insufficient to take the case to the jury.

On the night of July 3, 1952, James Jasper, the Sheriff of Pulaski County, accompanied by three other officers, drove to the suburbs of Somerset to intercept a delivery of some illicit whiskey. When they arrived at a place known as "Bogel-

town" they parked the car off Highway No. 27 in a lane near James Ingrham's residence. Officers Hatfield and Chumbley stayed at the car while Sheriff Jasper and Officer Todd proceeded to a place nearer the Ingrham residence where they secreted themselves to await the arrival of a "two-tone" automobile which they had been informed would be used in delivering the bootleg whiskey.

At about 9 o'clock a "two-toned" Oldsmobile car drove up to a place on "Bogel-town Road" where it intersects an alley leading to James Ingrham's residence and stopped. A man got out of the car and walked directly to James Ingrham's home where he had a short conversation with Amanda Ingrham, and then immediately returned to his car. At this time, according to Officer Todd, Sheriff Jasper and he had reached the Oldsmobile, and just as Sheriff Jasper started to place his hand on the door of the car, an occupant of the Oldsmobile fired a pistol shot into Sheriff Jasper's body. Officer Todd stated that he then drew his pistol and fired three shots at the departing Oldsmobile. Todd further testified that Sheriff Jasper had not drawn his gun, nor had he, nor Sheriff Jasper, been given a chance to say anything to the occupants of the Oldsmobile.

Officers Hatfield and Chumbley heard the report of the pistol and rushed to the scene of the shooting to see the Oldsmobile drive away and to find Sheriff Jasper lying in the road mortally wounded. Neither of these officers was able to identify any of the occupants of the Oldsmobile.

Willard Sprinkles, who was jointly indicted with Kinder for this crime and who is presently confined in the LaGrange Reformatory, was called to the witness chair by the Commonwealth, but he refused to answer questions on asserted constitutional grounds. However, Sprinkles did state that Kinder drove him to Pulaski County on July 3, 1952, in a "two-toned" Oldsmobile. Fred Locke, Deputy Bell County Clerk, testified that the records of his office reflected that on February 28, 1952, Kinder owned an Oldsmobile 88 Coupe

which he transferred on August 21, 1952, to Marshall Welsh.

John Vaught, a merchant who lived in East Somerset, testified that on the night of July 3, 1952, at about 6:30 o'clock, Kinder and Sprinkles came to his place in a "two-toned" Oldsmobile, bought a soft drink and talked with him for about fifteen minutes. Mr. Vaught stated that Kinder and Sprinkles left his store traveling in the direction of Somerset.

W. M. Rogel, who operates a grocery store at Nancy on Highway No. 80, ten miles west of Somerset, testified that Kinder stopped at his place on the night of July 3, 1952, at approximately 9:30 o'clock, and inquired if there was a road that turned off Highway No. 80 that led to Cumberland Falls. Mr. Rogel further stated that Kinder offered to sell him some whiskey, but he declined the offer, and that Kinder left his store in a "two-tone Olds 88," but another person was driving the car.

The testimony of Pat Patterson was to the effect that while he was in jail with Kinder, he heard Kinder offer Marie Johnson some money if she would not recognize him. It was further shown by the testimony of Amanda Ingrham that Willard Sprinkles came to her home in "Bogel-town" just prior to the time Sheriff Jasper was slain and asked where her husband was, and that she told him he had better leave because "the law was out there;" that by the time Sprinkles had time to "get back to the corner," she heard two or three shots fired and then heard "a car start out fast."

Kinder did not testify or introduce any evidence. He relied upon his motion for a directed verdict of not guilty.

 In order to sustain conviction in a criminal case, where the evidence is either direct or circumstantial, it is not necessary that the evidence should exclude every possibility of a defendant's innocence. It is sufficient if all of the circumstances when considered together point unerringly to his guilt. Hendrickson v. Commonwealth, Ky., 259 S.W.2d 1; Taylor v.

Commonwealth, 293 Ky. 823, 170 S.W.2d 903. We think the evidence was sufficient in this case to justify a submission to the jury on the question of appellant's guilt or innocence. See Brown v. Commonwealth, Ky., 275 S.W.2d 928; Vanover v. Commonwealth, Ky., 237 S.W.2d 539.

█ The appellant next contends that the court erred in overruling his motion for a subpoena duces tecum which he claims he was entitled to under Section 152 of our Criminal Code of Practice. The objective sought by this motion was to compel the Commonwealth to produce before trial, for the inspection of the accused and his counsel, the following items: "(1) The copy of the F.B.I. Ballistic Laboratory Report; (2) The copy of any testimony, if recorded, of witnesses who appeared before the Pulaski Grand Jury that resulted in this indictment; (3) The results of paraffin tests given prisoners on or about July 3, 1952, if any; (4) A copy of any signed statements or confessions the plaintiff intends to introduce as evidence; (5) The gun and pellet or pellets the Commonwealth intends to introduce in evidence; and (6) The pellet introduced in the second trial of Willard Sprinkles by the defense."

This Court in Wendling v. Commonwealth, 143 Ky. 587, 137 S.W. 205, 211, held that neither the accused nor his counsel was entitled to inspect and examine, before the trial, articles or evidence in the possession of the Commonwealth. In that opinion the Court, speaking through Judge Carroll, said:

"It is further complained that the trial court refused to require the commonwealth to produce before the trial for the inspection of the accused and his counsel clothing and other articles that were subsequently introduced as evidence by the commonwealth. We are not prepared to say that the court abused a sound discretion in refusing this request. We know of no practice that makes it incumbent upon the commonwealth to submit before the trial for the inspection and examination of the accused or his counsel articles in

the possession of the commonwealth that it proposes to and will introduce as incriminating evidence against him, but both the accused and his counsel should have full and free opportunity to examine them when offered as evidence. We may further add that in this case the accused and his counsel knew before the trial what these articles were and that they would be offered as evidence, and had full and free opportunity to examine them during the trial, and so the accused was not prejudiced by the refusal of the court to permit an examination of these articles before they were offered as evidence."

While it appears that some jurisdictions have adopted a different rule on pre-trial discovery, inspection and disclosure in the field of criminal law, nevertheless, the rule we have adopted in criminal cases relative to this subject seems to have served the people of this Commonwealth adequately; because through the years our legislature has only changed it in one respect, which we shall now consider. Section 110 of our Criminal Code of Practice provides that any person indicted by any grand jury for any crime or misdemeanor shall have a right to procure a copy of the stenographic record of the testimony heard before any grand jury by paying the prescribed fee for such report. In Turk v. Martin, 232 Ky. 479, 23 S.W.2d 937, we directed a stenographer who had taken testimony given before a grand jury to furnish the accused a copy of it upon the payment of the prescribed fee. However, the appellant concedes that Section 110 of our Criminal Code was not violated in this case as there was no stenographic report made of the grand jury's proceedings. After careful consideration of the rule announced in the Wendling case we conclude that the court did not abuse a sound discretion in overruling the motion.

█ It is further urged on behalf of the appellant that the court erred in failing to instruct the jury on the law pertaining to the right of officers to search the Olds-

mobile without a search warrant. Apparently counsel for appellant has overlooked the fact that there is no evidence that Sheriff Jasper, or his deputy, was attempting to conduct a search of the Oldsmobile. The evidence on this point discloses that Sheriff Jasper was shot as he reached the Oldsmobile which was parked on a public road. Another objection is raised to the form of instruction number two which has been considered and found to be without merit.

We think the appellant had a fair trial and we find no error prejudicial to his substantial rights. Criminal Code of Practice, Section 340.

Judgment affirmed.