Arthur Bryson RICE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Nov. 4, 1966.

A. W. Mann, Ashland, for appellant.

Robert F. Matthews, Atty. Gen., Lloyd R. Cress, Asst. Atty. Gen., Frankfort, for appellee.

MONTGOMERY, Judge.

The question is whether the evidence is sufficient to sustain the verdict of guilty of the murder of Brenda Lou Howard. Arthur Bryson Rice appeals from a judgment of life sentence.

Sometime in the evening of March 14, 1962, Brenda Lou Howard and her husband, Donald, both received gunshot wounds, and Brenda Lou knife wounds, which resulted in their deaths. The killings occurred in a remote wooded area near Ashland frequented by young people for romantic purposes. The young couple had been married a short time. The announcement of the wedding was being postponed until Brenda Lou, a senior, graduated from high school.

Brenda Lou was "barely alive" when found the following morning. She was lying on the floor in the rear of the car. She was on her back, with her head turned toward the front of the car and the driver's seat. She had received three gunshot wounds on the right side of her face and her head. A bullet removed from her brain had inflicted the fatal wound. She received a knife stab wound in the breast bone. Her other wounds were described thus:

"* * * there were several wounds on her hands, on the back of her left hand a severe slash wound, then there was a grasping type wound into the bone on her left hand which severed the web space between the thumb and the fingers and went across the bone, there were several stab like wounds in the palm of the left hand, there were several stab like wounds on the back of the right hand and it has more from which she grasped the knife."

Donald Crawford and Michael Estep testified that about dusk on the night of the killing they were passengers in a car which was driven slowly past the scene of the killing. They saw two cars facing each other about fifty to sixty yards apart. One was identified as belonging to Donald Howard. The other car was a 1950 or 1951

Ford, with a broken tail light patched with tape and with primer paint on a front fender. This description matched a car sold to appellant by James Marcum about two weeks before the homicide. There was evidence that such a car was kept parked behind appellant's house after the killing. Appellant sold his car for "junk" shortly thereafter.

Appellant was unknown to Crawford and Estep, but the detailed description they gave of the man standing beside the Howard car substantially fitted appellant. They reported to the police the next morning their observations of the previous evening. Appellant's attack on the detailed descriptions goes to the credibility of the witnesses and was a matter for the jury to decide.

Mary Vanderpool testified that she saw appellant and Earl Caudill leaving appellant's home about seven o'clock on a Wednesday night which, she felt almost certain, was the night on which the victims were killed. She said that Caudill was carrying a rifle. About two weeks prior thereto she had observed appellant and Caudill "hollering at her and whistling at her," referring to Brenda Lou, who crossed the street ostensibly to avoid them.

The rifle from which the fatal bullet was fired was owned by appellant's father, with whom appellant lived. It was shown that appellant frequently used the rifle for target shooting in the area where the crime was committed. The rifle was taken from his home by officers about one month after the killing.

The investigating officers found seven spent shells at the scene of the crime. Three of the shells were found inside the automobile where Brenda Lou's body was found. Four shells were found on the ground outside the car. A ballistics expert testified that the shells had been fired from the rifle owned by appellant's father. He further testified that the bullet fragment removed from the victim's head was of the same caliber as the rifle. The condition of

the fragment was such that the bullet could not be identified as having been fired from the rifle. Appellant's attack on the integrity of the shells and fragment is meritless in view of the detailed evidence establishing their proper custody at all times.

■ The standard by which to determine the sufficiency of the proof to uphold a conviction based on circumstantial evidence has been expressed in different ways. Bolen v. Commonwealth, 303 Ky. 611, 198 S.W.2d 309; Johnson v. Commonwealth, Ky., 244 S.W.2d 736; Hendrickson v. Commonwealth, Ky., 259 S.W.2d 1; Pennington v. Commonwealth, Ky., 262 S.W.2d 689; Kinder v. Commonwealth, Ky., 279 S.W.2d 782; Holland v. Commonwealth, Ky., 323 S.W.2d 411; Etherton v. Commonwealth, Ky., 335 S.W.2d 899; Brown v. Commonwealth, Ky., 340 S.W.2d 471; Rose v. Commonwealth, Ky., 385 S.W.2d 202. Without reiterating the circumstances, the evidence is sufficient to sustain the verdict in the light of the cases cited. See also Hoskins v. Commonwealth, Ky., 374 S.W.2d 839.

■ It is unnecessary to prove motive to sustain a verdict. Kratzwald v. Commonwealth, 299 Ky. 10, 184 S.W.2d 120; Pittman v. Commonwealth, Ky., 242 S.W.2d 875; Asher v. Commonwealth, Ky., 275 S.W.2d 416. However, there is evidence here to indicate that the motive was sexual assault. The testimony concerning appellant and Caudill "hollering" and "whistling" at Brenda Lou so indicates. The physical facts of the wounds indicate that Donald Howard may have been killed by gunshot wound first and that Brenda Lou was then attacked and threatened with a knife. The cut wounds on her hands indicate the desperation of her defense and also indicate that she was shot with the rifle as a last resort. The fact that a sizeable sum of money was not taken indicates that the motive was other than robbery.

The evidence for the prosecution has been examined and found sufficient. The testimony in behalf of appellant was in

**805**

the nature of an alibi, which was not believed by the jury. In Fry v. Commonwealth, 259 Ky. 337, 82 S.W.2d 431, relied on by appellant, the proof of alibi was overwhelming. Such is not the case here.

Fyffe v. Commonwealth, 301 Ky. 165, 190 S.W.2d 674, and 305 Ky. 760, 205 S.W. 2d 335, relied on by appellant, is distinguishable. In Fyffe there was "no clear and cogent evidence," as described in Tarkaney v. Commonwealth, 240 Ky. 790, 43 S.W.2d 34, that the death was the result of some criminal agency. Death resulted here from a criminal agency without doubt; hence, the Fyffe case is not controlling.

Judgment affirmed.