Kellis M. Tate, Plaintiff in Error,

*v.*

State of Tennessee, Defendant in Error.

413 S.W.2d 366.

(*Knoxville,* September Term, 1966.)

Opinion filed March 1, 1967.

BURKETT C. McINTURFF, Kingsport, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and THOMAS E. Fox, Assistant Attorney General, Nashville, for defendant in error; JOHN C. WOOTEN, Assistant District Attorney General, Kingsport, prosecuted the case for the State in the trial court.

Mr. Justice Dyer delivered the opinion of the Court.

Kellis M. Tate appeals from a conviction of murder in the second degree for which he has been sentenced to serve ten years in the State Penitentiary. This conviction is for murder of one, Charles Ogle, and in this opinion Kellis M. Tate will be referred to as defendant or by name and Charles Ogle as deceased or by name.

Tate and Ogle were both employed by Lambert Brothers Construction Company. Tate was the office manager of the Kingsport Tennessee office. Ogle, having charge of certain phases of the work in East Tennessee and Southern Virginia, set up an office for himself in this Kingsport office in June 1965. This resulted in Ogle having a private office just down the hall from where Tate worked.

It had been the custom of the employees of the Kingsport office to come to work at 8:00 a.m. on each work day. A short time after Ogle came to the Kingsport office he instructed Tate to come to work at 7:00 a.m. as he (Ogle)

felt the company might be losing business having no one to answer early telephone calls. Tate testified, since he was often alone in the office from 7:00 a.m. to 8:00 a.m. and at times had a large sum of money on hand, he brought a pistol to the office for protection. That he kept the pistol in the safe and upon arriving about 7:00 a.m. would put it in his pocket. Later in the morning, after the other employees had arrived, he would put the pistol back into the safe. One of the employees who worked under Tate testified he had never seen a pistol in the safe.

The salary checks for the employees of the Kingsport office were mailed from the Knoxville office to Kingsport. On 30 August 1965 these checks arrived but the check due Tate was not enclosed. Tate called the Knoxville office and was told to see Ogle. This was shortly after 8 a.m. on this day. Employees of this office testified Tate slammed the receiver back on the telephone and rushed to Ogle's office. Tate testified he went to the office but in a normal manner.

Tate testified he found Ogle in his office seated behind his desk and was asked by Ogle to come in and shut the door. There were no other persons present. Tate said he inquired about his check and Ogle gave him three checks, to-wit; salary check, vacation pay due and termination pay due. Tate said he asked Ogle "Why are you doing this to me." To which Ogle replied it was not his idea. Tate replied, "You are a liar," and added "you are taking my job and giving it to one of your friends." Ogle, arising from his chair, started around the desk toward Tate in a threatening manner with his body in sort of a crouch. Tate removed the pistol from his left front pocket and shot Ogle once in the left chest. Tate then testified as follows:

Q. And what happened after he was shot?

A. Well, he took about a half step more forward and then he stopped. He throwed both his arms up across his chest, his fists were closed, and then he backed up around the desk.

Q. And where was he when he fell?

A. Well, he was behind the desk, almost parallel with the desk and the wall. He didn't fall, he went down on his knees and hands—went down on his hands and knees, and his hat fell off.

Ogle died within minutes and his body was found lying on the floor behind his desk with his head at one end of the desk and his feet at the other. An autopsy revealed the bullet entered the left chest and from this point followed a downward course.

Tate testified Ogle, prior to 30 August 1965, had related to him incidents of where Ogle had had employees of the company fired. These incidents were related in such a manner as to indicate Ogle would under such circumstances, if necessary, do physical violence to the employee being fired. Tate testified, Ogle being the larger and stronger man, he was afraid if Ogle got to him when he came around the desk that morning he (Ogle) would break his (Tate's) neck. On cross-examination Tate said when he went to Ogle's office the pistol in his pocket had the safety catch on and before shooting Ogle he released the safety.

The assignments of error are as follows:

1. The evidence preponderates against the verdict and in favor of the innocence of the accused.

2. The defendant was not afforded an opportunity to be present at the time the autopsy was made upon the body of the deceased and he was denied a copy of the autopsy report.

3. Police officers talked with the defendant immediately after the incident took place without informing him of his constitutional rights not to make a statement nor of his constitutional rights to counsel.

4. Four special requests to the trial judge's charge relative to the defense of self defense in that the deceased was a much larger and stronger person than the defendant were refused.

█ The theory of defendant was that he fired in his own necessary self-defense. The jury rejected this theory. We think this evidence clearly makes a question for the jury both on the issue of guilt or innocence and upon the issue of whether it was second degree murder or manslaughter. The first assignment of error is overruled.

██ An autopsy was had on the body of deceased about 10:00 a.m. on the day of the murder. Under the second assignment of error defendant alleges it was error to introduce the results of this autopsy, since he was not permitted to be presented at the time of the autopsy. In support of this claim defendant cites that part of Article I, section 9 of the Constitution of Tennessee permitting defendant to be present at all stages of the proceedings against him. Defendant is in error in this matter. This section of our constitution does not require the presence of an accused except during the trial of the cause. See *Logan v. State,* 131 Tenn. 75, 173 S.W. 443 (1914).

On 10 November 1965 the defendant moved the court a copy of the autopsy report be made available to him.

The court took this motion under advisement and on 15 November 1965 overruled same. The trial in this case began on 18 November 1965. This action of the trial judge in overruling this motion is assigned as error.

■ The matter of autopsy reports where death has occurred from a felonious cause is controlled by T.C.A. sec. 38-604 which code section was enacted by Chapter 61, Public Acts of 1949 and T.C.A. secs. 38-701 through 38-714 which code sections were enacted by Chapter 174, Public Acts of 1961. Construing these code sections in pari materia the defendant had a statutory right to a copy of the autopsy report.

■ The record before us only contains an order reciting Dr. William Harrison of Kingsport, Tennessee performed the post mortem examination and the District Attorney General had a copy thereof. The order then recites the motion was taken under advisement for five days and overruled. There is nothing in the record to indicate whether a hearing was had on the motion and if so what evidence was adduced thereon. For example the code sections above referred to require autopsy reports be filed with certain state and county agencies. We cannot determine whether the autopsy report was filed as required, and if so, whether or not defendant was refused a copy thereof. Under this record it is not possible to determine whether the trial judge was in error in overruling this motion.

■ Due to the state of this record we will treat this matter as if the trial judge was in error in overruling this motion, which presents the question of whether such be harmless error or not. The autopsy report was never introduced into evidence. Dr. William Harrison, who performed the post mortem examination, was a witness

for the State and cross-examined by defendant. We think even considering this action of the trial judge be error it was harmless error. The second assignment of error is overruled.

Officers of the City of Kingsport arrived at the scene of this shooting within minutes after it occurred and upon their arrival several people were already there. The officers asked who did the shooting and to this question defendant replied that he had. One officer then asked why and defendant replied because he (Ogle) was firing me. Two of these officers, as witnesses for the State, testified to these statements made to them by defendant. The third assignment of error presents the question of whether these statements made to these officers by defendant are admissible since, at the time defendant made these statements, he had not been advised of his constitutional rights.

Defendant cites the case of *Escobedo v. State of Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. In *Johnson v. State of New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 the court, on the issue here, gave the test laid down in *Escobedo* in the following language:

"[where] the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogation that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent." 384 U.S. 719, 86 S.Ct. 1772.

■ The gist of this matter is that the officers, arriving at the scene of a shooting and even before they could be sure the victim was dead, asked, with several persons present, in substance, "who did it;" and after getting an answer asked "why." This is about as much of a general inquiry as one would ever find. The third assignment of error is overruled.

■ We have examined the charge of the court relative to self-defense and find it is correct and complete. The fourth assignment of error is overruled.

Judgment affirmed.

BURNETT, CHIEF JUSTICE, CHATTIN and CRESON, JUSTICES, and HARBISON, SPECIAL JUSTICE, concur.