THE STATE OF OHIO, APPELLEE, *v.* WHITE, APPELLANT

[Cite as State v. White, 9 Ohio App. 2d 271.]

(No. 27549—Decided March 9, 1967.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.
*Mr. Gerald S. Gold* and *Mr. James R. Willis,* for appellant.

SKEEL, J. This appeal comes to this court from a judgment entered in the Court of Common Pleas of Cuyahoga County on the unanimous decision of a three-judge court (trial by jury having been waived as provided by law) finding the defendant guilty of murder in the first degree without a recommendation of mercy.

On the morning of October 20, 1964, a taxicab crashed into a fire hydrant located in the vicinity of East 89th Street and Crawford Road. Two men were seen to emerge from the cab and hurriedly leave the scene. When the police arrived they found the cab driver in the front seat. He was removed from the cab and taken to Mt. Sinai Hospital where he was pronounced dead from gunshot wounds. On October 23, the Cleveland Police contacted the house detective of the Majestic Hotel, who produced a 22-caliber revolver that he had taken from Leon Samuels following an incident at the hotel. This gun was determined to be the one used in the murder of the cab driver.

The police investigation centered on Leon Samuels and this defendant, Kenneth White, as the perpetrators of the robbery and the murder of the cab driver, Ernest Williams.

Kenneth White, together with his girlfriend, Dorothy Berts, surrendered to police on October 24 at about 10:30 p. m. at the Central Police Station. Samuels was arrested the following day and was subsequently permitted to plead guilty to two counts of murder in the second degree.

The defendant, White, went to trial, as stated, before a three-judge court. It was the theory of the state, which was clearly supported by the record, that White was the one who actually shot Williams. It should also be stated that the evidence disclosed, without contradiction, that, upon an examination of the inside of the cab, some change was found on the floor, the radio microphone had been pulled out, and the decedent's left hand pants pocket was turned inside out.

From the judgment finding defendant guilty on two counts of murder in the first degree, that is, the purposeful killing of the taxi driver, Williams, of deliberate and premeditated malice and the purposeful killing of such taxi driver in the perpetra-

tion of or the attempt to perpetrate a robbery, the defendant asserts four assignments of error.

The first claimed error is in the presenting of evidence concerning decedent's family and his family responsibilities. Defendant offered to stipulate that Williams "was a real living person on the date alleged in the indictment and that the dead body examined by the coroner [on the date alleged] was * * * that of Ernest Williams." Unquestionably the family obligations of the decedent were not an issue, or could such testimony contribute anything in support of the state's case, and it was clearly irrelevant to the issues here being tried. It would constitute error to admit such evidence if the case were being tried to a jury. In the instant case, the issues of fact were being presented to a three-judge court, and it, therefore, cannot be held that more than the evidence relevant to the issues of the case would be considered. Certainly the defendant could not have been prejudiced under these circumstances.

The second assignment of error presents the question of whether defendant's first confession or written statement made by him and signed early on the morning of October 25, 1964, was procured in violation of his constitutional rights as defined by the Supreme Court of the United States in the case of *Escobedo* v. *Illinois* (1964), 378 U. S. 478. There is considerable conflict in the evidence as to the circumstances surrounding the taking of this statement. The defendant, as stated heretofore, together with his girlfriend, Mrs. Dorothy Berts, surrendered themselves to the police at about 10:30 p. m., October 24. There was some evidence that Mrs. Berts hoped that she would be eligible to claim the reward offered to one giving information leading to the arrest and conviction of the perpetrators of the murder of Ernest Williams, because of a previous statement about the case that she had made to the police. The defendant not only filed a motion to suppress his first written statement or confession but also a motion to suppress his written statements made October 26, on the grounds that he was not advised of his constitutional right to remain silent and the right to the assistance of counsel. He asserts that he was not advised of these constitutional rights before the statement of October 25 was made. The second statement, made on October 26, was ordered suppressed during trial on the merits on the alleged violation of

his constitutional rights, after a previous motion to suppress had been overruled upon a pretrial hearing. However, as to the first statement, there is credible evidence clearly supporting the contention of the state that the defendant was informed of his right to remain silent on being questioned by police in a pretrial in-custody interrogation. The written statement of the defendant, as shown by the exhibit received in evidence containing the statement, is headed with advice on the subject, which is sufficient when considered in the light of the other testimony of advising the defendant of his right to remain silent. The evidence on this question being in conflict, and the three-judge trial court being the trier of the facts and having ruled on the question adversely to the defendant, we, therefore, conclude that the overruling of the motion to suppress, dealing with the first question of whether the defendant was advised of his constitutional right to remain silent, is supported by credible evidence, and the court's ruling thereon must be affirmed.

It is also claimed that the defendant was not afforded the services of counsel before making a statement or advised of his constitutional right to be afforded the right to call counsel or to the appointment of counsel in case of indigency. The record is clear that there was no request for counsel at the time of the first statement taken early in the morning of October 25. While it is argued that a request should not have been necessary, as was held in *Miranda* v. *Arizona,* 384 U. S. 436, the law of Ohio on this subject is governed by *Escobedo* v. *Illinois,* 378 U. S. 478 (reported prior to *Miranda*), and *State* v. *Carder,* 9 Ohio St. 2d 1. The third paragraph of the *Carder* syllabus provides as follows:

"3. Two elements of the rule in relation to in-custody interrogation prescribed by *Escobedo* are, one, the person being interrogated must request and be denied the right to consult with counsel, and, two, the interrogators must have failed to effectively warn him of his absolute constitutional right to remain silent."

This court is bound to follow a decision of our Supreme Court, which is squarely on point. This assignment of error is, therefore, overruled.

The defendant, in arguing this phase of the case, cites Section 2937.03, Revised Code (129 Ohio Laws 582, 749), as his au-

thority for the right to counsel when interrogation is attempted after arrest and before arraignment. This section provides the duties of a judge or magistrate on arraignment in a preliminary hearing in a felony case. It provides that on arraignment the court or magistrate shall inform the accused of the nature of the charge, the possible punishment upon conviction, and the right to have counsel and the right to a continuance in the proceedings to procure counsel. This section does not deal with or provide the authority for the arresting officer or officers investigating an alleged crime, after the arrest of one suspected of a felony, to appoint counsel for indigents or create an obligation on the part of the state to pay for such services. If such authority is to be granted to law enforcing authorities, it will have to be conferred by statute. Section 2937.03, Revised Code (129 Ohio Laws 582, 749), does not provide such authority. It is there provided that the judge or magistrate may, in a proper felony case, appoint counsel. Counsel cannot be appointed until the proceeding has progressed to the preliminary hearing stage where the court is vested with jurisdiction by filing of a sufficient affidavit charging the crime for which the arrest was made. An almost insurmountable difficulty is met in following the rule of the Supreme Court of the United States set out in *Escobedo* and *Miranda* requiring the state to make counsel available before an in-custody interrogation may be conducted after arrest and before the prisoner is charged, especially as to an indigent defendant. There is no one at that point in the case vested with power to provide counsel at the expense of the state. The result would seem to be that an arresting officer cannot interrogate a prisoner after his arrest and while in custody until the prisoner has waived "intelligently" (after he has knowledge of the right) the right to counsel in addition to knowledge of his constitutional right to remain silent.

Two other assignments of error are presented on this appeal, the first of which concerns the right of a defendant to make an examination of the written statements of state witnesses (or exhibits) in the possession of the prosecution and the written statements or confessions voluntarily made of a defendant upon pretrial or before going to trial on the merits, that are also in the prosecution's possession. The second question concerns the obligation of the prosecution to make available to a de-

fendant evidence known to or in possession of the state, which is favorable to the defendant and which if not disclosed is of sufficient importance (when considered by a reasonably minded person as affecting the defendant's guilt under the law) to deprive the defendant of a fair trial. There is a distinction made in some jurisdictions between the right of inspection before pretrial or trial on the merits and the right to the use of such statements as an aid to cross-examination after the witness has testified on behalf of the state.

As to the first of these assignments of error, the rule in Ohio does not require the prosecution to afford the defendant such inspection unless the statement is used as an aid to the prosecution in conducting the examination of the witness.

In the case of *State* v. *Yeoman,* 112 Ohio St. 214, the court said in the syllabus:

"In a criminal case, the defendant cannot compel the prosecuting attorney to submit to him or his counsel a written confession, signed by the defendant, and in the possession of the prosecuting attorney, for the purpose of inspection and copy. Neither Section 11552, General Code [Section 2317.33, Revised Code], nor Section 13664, General Code [Section 2945.46, Revised Code], requires the giving of such inspection."

That decision is based on the second paragraph of the syllabus of *State* v. *Rhoads,* 81 Ohio St. 397, 27 L. R. A. (N. S.) 558.

The Ohio rule on the right of inspection in criminal cases is found in the case of *State* v. *Sharp,* 162 Ohio St. 173. The third paragraph of the syllabus provides:

"3. In a criminal prosecution, defense counsel is not entitled to see and examine a purported written statement, admission or confession of the accused taken by and in the hands of the prosecuting attorney before trial."

And, on page 187 in the opinion, after an extensive quotation from the record showing that the prosecution read extensively from defendant's answers given to the coroner and other officials at the county jail, it is said:

"The transcript in question, if it is not a part of the coroner's records, is not a public document open to inspection to the defendant's counsel as a matter of right. But when a portion of it was used before the jury in such a way that its con-

tents may become an issue, the defendant's demand for its production and his examination should have been sustained.''

The distinction is, therefore, clearly made between statements of witnesses, including confessions of defendants in the hands of the prosecution used by it in conducting the examination of a witness and which should be made available to the defense, and statements made, which remain in the hands of the prosecution without use or comment. Such statements are not subject to inspection by the defendant's counsel. This must be true unless the latter contains evidence which the prosecution should disclose to afford the defendant a fair trial.

An examination of the evidence of the witnesses who had given written statements of their knowledge of the material fact material to this case to the prosecution shows conclusively that such statements were never referred to during the course of the presentation of the state's case and, therefore, they did not become subject to the defendant's examination. The record discloses that the prosecution studiously avoided any reference to such statements. Knowledge of their existence was brought into the record on cross-examination. In one or two instances, when the witness was asked by the defense about his statements, such witness testified that the material in his statements was the same as his testimony. This fact has not been contradicted by the defendant or an attempt made to contradict it. This claim of error is, therefore, overruled.

The rule of law in Ohio dealing with the duty of the state, under proper circumstances, to disclose evidence known to the prosecution but not to the defendant and which would be in his favor is defined in the case of *McMullen* v. *Maxwell, Warden,* 3 Ohio St. 2d 160. In this case the petitioner seeking a release from custody by habeas corpus had been previously found guilty of murder in the first degree. The state had a strong circumstantial case against McMullen. It was the state's theory in the murder case wherein he had been found guilty, and as a result of which he was serving time, that the deceased was killed by a bullet from a 38-caliber Colt revolver. A gun was introduced, which was said to be like the one used in the murder. The state contended that the deceased came to his death by a bullet fired from a snub-nosed Colt 38 belonging to a friend of

the defendant, which defendant had borrowed. Ballistic tests were in the possession of the state, which stated the bullet which killed decedent came from a 38-caliber long-barrelled revolver. Such a gun was in no way connected with petitioner by the evidence. The petitioner, defendant in the murder case, was not advised of the ballistic report conflict. On page 166 in the *McMullen case,* the court stated:

"A prosecutor would never be justified in knowingly using perjured testimony or fabricated evidence. In most instances, however, he would be justified in ignoring evidence which is favorable to the defense. A criminal prosecution is an adversarial proceeding in which the participants are normally concerned only with the presentation of one side. The prosecutor may and should prosecute to the best of his ability, relying on the defense to produce all evidence tending to acquit the accused. * * *

"Whether the prosecutor had a duty to disclose evidence which is favorable to the accused and whether his failure to do so constitutes a denial of due process will depend upon the particular circumstances of each case.

" '* * * It can be said that the prosecutor must not act in an essentially unfair way. But this is an area in which the question of fundamental fairness depends so much upon the facts of the particular case that a precise rule cannot be devised.

" 'It seems likely that many situations will arise in which a prosecutor can fairly keep to himself his knowledge of available testimony which he views as mistaken or false. But there are other circumstances in which a prosecutor must, or certainly should know that even testimony which he honestly disbelieves is of a type or from a source which in all probability would make it very persuasive to a fair minded juror.' *United States, ex rel. Thompson,* v. *Dye, Warden, supra,* 221 F. 2d 763, 769 (concurring opinion).

"Although no hard and fast rule can be set forth defining when the prosecutor has a duty to disclose evidence, certain guidelines can be deduced from the cases. If the testimony of a prosecution witness is perjured and the prosecutor knows, or has good reason to believe, that the testimony is false, he must either disclose the falsity of the testimony or make available to the defense the means to do so. *Napue* v. *Illinois,* 360 U. S. 264;

*Alcorta* v. *Texas*, 355 U. S. 28; *People* v. *Savvides*, 1 N. Y. 2d 554, 136 N. E. 2d 853.

"The duty to disclose may also arise where the prosecutor has knowledge of evidence which would raise serious doubts nn the mind of any reasonable prudent person in his position, as to the validity of evidence which has been introduced. This does not mean that the prosecutor must disclose every discrepancy between the evidence introduced and the facts as he knows them. See *Application of Landeros*, 154 F. Supp. 183. In order for the nondisclosure to amount to a denial of due process the evidence must be vital and material to the issue of guilt or penalty. *United States, ex rel. Thompson*, v. *Dye, Warden*, *supra* (211 F. 2d 763); *United States, ex rel. Almeida*, v. *Baldi*, *supra* (195 F. 2d 815); *United States, ex rel. Montgomery*, v. *Ragen*, 86 F. Supp. 382."

An examination of the record in the instant case does not reveal even the slightest suggestion that evidence of a vital nature to the defendant and known to the prosecution was withheld from the defendant.. The principal part of the case of the state was based on disclosures and confessions made by the defendant and by his friends and associates with whom he had confided and who were called by the state to testify and were subject to cross-examination by the defendant. This claim of error is, therefore, overruled.

The record discloses that the defendant was accorded a fair trial, conducted within the framework of his constitutional rights. There can be no reasonable doubt that he, by his own confession and his admissions to friends, was directly present and was involved in the robbery and murder of Ernest Williams while he was a passenger in Williams' cab. The decision of the court is clearly supported by credible evidence of the defendant's own making.

For the reasons as above stated, the judgment is affirmed.

*Judgment affirmed.*

CORRIGAN, P. J., and SILBERT, J., concur.