**STATE of Iowa, Petitioner,**

**v.**

**Honorable William R. EADS, Respondent.**

**No. 53408.**

Supreme Court of Iowa.

April 8, 1969.

which the State accuses Elliott Charles Ricehill of the crime of murder in violation of section 690.1, Code of Iowa, 1966.

After a grand jury indictment had been returned, defendant filed his motion to require the State to produce certain evidentiary material for inspection, copying, and analysis. Defendant asks that the State produce the following:

1. Written statements secured by Cedar Rapids Police Department of all witnesses the State expects to testify at the trial, particularly those of Linda Beltram and Chester Davenport;

2. Copy of the F. B. I. report covering its analysis of certain physical evidence;

3. Investigation reports of police officers;

4. Photographs of the deceased taken by the police in the course of their investigation;

5. Certain physical evidence seized by the State following the alleged crime, including wrist watches of both defendant and the deceased, bed linen, whiskey bottle and cap therefrom, all of which were tested and analyzed for use against the defendant;

6. Report of autopsy performed upon the deceased by Dr. Percy Harris, Linn County Medical Examiner, and Dr. Skopec, pathologist;

7. "Any exculpatory evidence" in possession of the police department or the county attorney which would assist defendant in establishing his innocence.

William G. Faches, County Atty., Thomas M. Horan, Asst. County Atty., and Thomas J. Wilkinson, Jr., Cedar Rapids, for petitioner.

Paul Kinion and R. Fred Dumbaugh, Cedar Rapids, for respondent.

LeGRAND, Justice.

This matter arises out of a prosecution now pending in Linn District Court in

A hearing was held before Judge W. R. Eads, at which it was stipulated all items requested by defendant were in the possession of the State (except the autopsy report which was to become available later) and could be produced.

Defendant claimed all of this material was necessary to "properly prepare for trial" and to afford him "complete and intelligent assistance of counsel."

The trial court allowed the motion in its entirety except for the catchall paragraph asking production of all evidence exculpatory to defendant.

■ The State seeks to test the legality of this order by writ of certiorari. This is permissible under our previous holdings. State v. Rees, 258 Iowa 813, 816, 139 N.W. 2d 406, 408, and citations. The State claims defendant is asking pre-trial discovery and that there is no such right in criminal cases.

It is true we have held discovery is not available to one charged with a crime. State v. District Court, 253 Iowa 903, 905, 114 N.W.2d 317, 318; State v. McClain, 256 Iowa 175, 181, 125 N.W.2d 764, 767, 4 A.L.R.3d 134.

However, that does not deny a defendant access to all evidentiary information which is in possession of the State and which is necessary to assure him a fair trial.

This is by no means a new controversy. As Justice William J. Brennan points out it dates back almost 150 years. In "The Criminal Prosecution: Sporting Event or Quest for Truth?", 1963 Washington University Law Quarterly 279, at page 284, he said:

"It may appear strange that resistance to criminal discovery should be so stubborn in America, when Chief Justice Marshall seemed so strongly to approve it. * * * [A]s a Circuit Justice he presided in the celebrated trial of Aaron Burr. At that trial a request was made on Burr's behalf for pre-trial inspection of a letter addressed to the President of the United States and in the possession of the United States Attorney. Although the great chief justice did not hold there was an absolute right to compel disclosure, in characteristically strong terms he stated his view that if the letter had evidentiary relevance, or indeed was useful in cross-examination of any Government witness at the trial, it could not, in fairness to the defendant, be withheld from him. But the value of that precedent was virtually unappreciated in our country for almost a century and a half."

In the same paper, at page 282, Justice Brennan comments: "Few issues raise more sharply [than does criminal discovery] the basic ideological clash between opposed theories of criminal justice. Perhaps this is the reason for the bitterness that has often marked the debate."

Both sides to this dispute have had their champions and still do. Arrayed against pre-trial disclosure of information were Justice Cardozo (then of the New York Court of Appeals) in People ex rel. Lemon v. Supreme Court, 245 N.Y. 24, 156 N.E. 84, 86, 52 A.L.R. 200; Justice Learned Hand in United States v. Garsson, (D.C., N.Y.), 291 F. 646, 649; and Chief Justice Vanderbilt of the New Jersey Supreme Court in State v. Tune, 13 N.J. 203, 98 A.2d 881, 885.

But they do not go unchallenged. We have already said enough to leave little doubt as to where Justice Brennan stands. His views are well stated in his dissent in State v. Tune, supra, at page 894, when he was sitting on the New Jersey court. Another who firmly recommends liberal pre-trial discovery is Chief Justice Roger J. Traynor of the Supreme Court of California. See "Ground Lost and Found in Criminal Discovery," 39 N.Y.U. Law Review 228. See also VI Wigmore on Evidence, Third Ed., section 1863, page 487, 488. We refer to other support for the doctrine later.

■ Our consideration of the problem before us is confined to the fundamental principle of fair trial. For present purposes we take as established the argument that, in the absence of suppression of evidence favorable to a defendant, states do not violate due process by denying pre-trial discovery. 23 Am.Jur.2d, Depositions and Discovery, section 312, page 721; Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737; State v.

Kelly, 249 Iowa 1219, 1221, 91 N.W.2d 562, 563; State v. Tharp, 258 Iowa 224, 229, 138 N.W.2d 78, 81. However, see also Palermo v. United States, 360 U.S. 343, 363, 79 S.Ct. 1217, 3 L.Ed.2d 1287, to the effect that in considering this question "constitutional grounds [are] close to the surface."

 It is generally agreed there was no right to pre-trial discovery at common law. Even in the absence of statute, however, few today deny that courts have inherent power to compel disclosure of evidence by the State when necessary in the interests of justice. 23 Am.Jur.2d, Depositions and Discovery, section 308, page 713; Pretrial Discovery in State Criminal Cases, 12 Stanford Law Review, pages 293, 322. Virtually all the cases cited throughout this opinion, except those few which rely on a specific rule or statute allowing discovery, emphasize the power of the trial court in the exercise of sound judicial discretion to compel such disclosure, subject only to review for an abuse thereof.

The principal arguments against pre-trial discovery are these:

(1) It would afford the defendant increased opportunity to produce perjured testimony and to fabricate evidence to meet the State's case; (2) witnesses would be subject to bribe, threat and intimidation; (3) since the State cannot compel the defendant to disclose his evidence, disclosure by the State would afford the defendant an unreasonable advantage at trial; and (4) disclosure is unnecessary in any event because of the other sources of information which defendant has under existing law. See 42 Nebraska Law Review 127; 12 Stanford Law Review 293; 69 Yale Law Journal 1149; 39 N.Y.U. Law Review 228; 1963 Washington U. Law Quarterly 279; State v. Tune, supra, at pages 884, 885. For a discussion of this and allied problems see 33 F.R.D. 47 and Annotations, 7 A.L.R.3d 1.

These reasons are disputed by those favoring greater discovery in criminal cases. They claim experience, what little there is,

shows these fears to be unjustified in theory and unfulfilled in practice. 39 N.Y. U. Law Review 228, 249; 1963 Washington Law Quarterly, supra, pages 287, 288; "Vermont's Experiment in Criminal Discovery," 53 A.B.A. J. (1967), page 732. See also "Task Force Report: The Courts," (1967), pages 41–44, (published by the President's Commission on Law Enforcement and Administration of Justice.)

In retrospect our opinion in State v. Burris, 198 Iowa 1156, 1162, 198 N.W. 82, 85, although it was based on alleged failure to comply with what is now section 771.13, Code, nevertheless presaged the trend toward a liberal policy of pre-trial disclosure of information which is so apparent today. There we said, after holding the failure to file exhibits with the minutes of testimony was not a ground for setting aside the indictment:

"We are not * * * holding that the state may arbitrarily withhold exhibits produced before the grand jury and then without warning, or right of inspection on the part of defendant, introduce them unexpectedly upon the trial of the cause. The state should fairly disclose its intentions in such a matter * * *; and at all times the trial court has the power, and should exercise the same, to require the state, upon application by the defendant, to permit an inspection under proper conditions of any and all exhibits which are used before the grand jury and which are intended to be offered in evidence upon the trial of the case. A defendant's right can and should be fully guarded in this manner."

 We believe this statement is consistent with the principles and philosophy upon which present-day opinions are extending greater discovery rights in criminal prosecutions: that surprise and guile should, as far as possible, be removed from the arena in criminal trials just as it has in civil cases.

Although we have never ruled directly on the matters here presented to us, counsel

call our attention to a number of cases involving related problems. None is controlling under present circumstances, but we refer to them briefly before discussing the issues now raised.

In State v. Bittner, 209 Iowa 109, 118, 227 N.W. 601, 605, we denied defendant the right to see the confession of his alleged accomplice. We did so, however, on this basis, "No subpoena duces tecum was issued, or requested to be issued, and no means known to the law was adopted by counsel for defendant *to effectuate the request made by one attorney to another*." (Emphasis added.)

The refusal there apparently rested, at least partially, on the failure of counsel to seek the information he wanted by proper procedure.

State v. Kelly, 249 Iowa 1219, 1221, 1222, 91 N.W.2d 562, 564, dealt with a defendant who, prior to trial, demanded "copies of all statements, investigations, reports, and other evidence, including confessions, if any, that the state intends to use." We approved the trial court's denial of this "broad and blind fishing expedition." We based this on the fact defendant did not demand any specific document and had failed to show any such statements, reports, or confessions were in the State's possession or were even in existence.

The matter next came to our attention in State v. Hodge, 252 Iowa 449, 463, 105 N.W.2d 613, 621, where we approved a ruling denying defendant's request, during trial, to examine notes to which an F. B. I. witness had referred during his direct examination. We held the ruling to be within the trial court's discretion.

In State v. Stump, 254 Iowa 1181, 1199, 119 N.W.2d 210, 220, complaint was made because the trial court refused to grant all of defendant's application for the production of books and papers, copies of statements and testimony before the grand jury. We affirmed the trial court, but it is significant to note that much of what de-

fendant asked for was furnished. We said, apparently with approval, "The trial court did order production for examination *all documents, photographs, and exhibits used in conjunction with the testimony of any witness whose evidence was attached to the indictment, together with statements given to the police by Leanna Skultety * * *.*" (Emphasis added.)

We also held defendant was not entitled to anything sought while on what was obviously a "fishing expedition."

State v. Tharp, 258 Iowa 224, 228, 138 N.W.2d 78, 80, 81, was next. There the county attorney had taken depositions under section 769.18 (prior to the amendment of 1965 which afforded defendant the right to be present and to cross-examine any witness called under this section). Defendant's request to examine such depositions was refused and we affirmed, basing our holding, in part at least, on the ground the depositions were the work product of the county attorney's office. We also commented on defendant's failure to take advantage of the procedure available to him— a bill of particulars.

We mention parenthetically that in Tharp we relied on a Vermont case, Hackel v. William, 122 Vt. 168, 171, 167 A.2d 364, 366, strongly condemning discovery in criminal cases. This is no longer the prevailing rule in Vermont. Vermont v. Mahoney, 122 Vt. 456, 176 A.2d 747, 750.

In State v. Johnson, 259 Iowa 599, 145 N.W.2d 8, a second trial after remand, our holding was that the matters defendant wanted produced had been substantially gone into on the first trial and were already known to him. We held, too, that under our Implied Consent law, defendant could have results of his blood test but not the work sheets or the fluid sample used.

We met up with the problem again in State v. White, Iowa, 151 N.W.2d 552, 555. This turned on a specific issue—entrapment. We held defendant *might* be

entitled to use the tapes of police communications to establish his defense and directed the trial court to determine this question by examination of police records in camera. We discussed there the effect of the Jencks Act on this question, as we had done in several previous opinions. State v. Kelly, supra; State v. Tharp, supra. We reiterate what we have previously said about the Jencks Act, but we do not rely on it for the conclusion we reach here.

We find none of these cases determinative of our present problem nor inconsistent with our decision here. Perhaps Stump is most closely in point. There we approved the trial court's exercise of discretion in favor of partial disclosure under circumstances quite similar to those now before us.

Other jurisdictions have considered the question and legal writers have treated it endlessly. We look to them for help in discussing the particular issues we must here decide.

I. As already mentioned the ultimate test against which our decision must be measured is that of a fair trial. Defendant is entitled to no more, and he must have no less. However, it is not only the defendant who is entitled to a fair trial. Society, too, represented by the prosecution, has an equal right to one. State v. Haffa, 246 Iowa 1275, 1283, 71 N.W.2d 35, 40; State v. Case, 247 Iowa 1019, 1030, 75 N.W.2d 233, 240; State v. Kelly, supra, 249 Iowa 1219, 1222, 91 N.W.2d 562, 564.

We have frequently mentioned the various protections and safeguards which insulate the defendant against unfair prosecution. They are stated in various ways in State v. District Court, 253 Iowa 903, 911, 114 N.W.2d 317, 322; State v. Tharp, 258 Iowa 224, 229, 138 N.W.2d 78, 81, and State v. White, Iowa, 151 N.W.2d 552, 554.

We must recognize, however, the circumstances under which a defendant is afforded these safeguards. He is frequently in custody; more often than not he is without funds; and seldom has he any opportunity to make an investigation or to engage in the fact-finding process so vital to his later defense. Meanwhile the State, with unlimited manpower and resources, has already completed its investigation, sometimes even before a formal charge is filed. If perchance the defendant should be able to conduct his own investigation, the trail is often cold when he starts after his evidence and ordinary sources of information have dried up. The argument has been made he already knows most of these things, and this is true if he is guilty. *But at this point he is presumed to be innocent.*

If this presumption is anything other than a meaningless maxim, we are obligated to afford a person charged with commission of a crime a fair chance to defend himself. We must admit, for instance, a lawyer is of little help if he has none of the trial tools with which to work. He cannot adequately defend if he is denied access to the facts. The State cannot discharge its duty to give defendant a fair trial simply by extending "safeguards" with one hand and withdrawing them with the other.

■ II. In the present case, for instance, no reasonable rule justifies denial of an opportunity for defendant to examine the physical evidence the State expects to use against him. It is subject to none of the objections urged against disclosure. The State has already had it analyzed. Anything of importance has been noted, detailed, and tested. There is no opportunity for perjury or falsification.

The defendant, of course, has the right to cross-examine the witnesses who testify regarding the manner in which such evidence incriminates him. How can he adequately do so without pre-trial preparation? How does he meet that testimony, usually from an expert witness, by a spur-of-the-moment cross-examination? Layman v. State, Okl.Cr., 355 P.2d 444, 448.

■ Here the State admits it has certain wrist watches, a whiskey bottle and cap, and bed linen, all taken as having some relevance to this crime. At least

some of these items were tested for the State at the Federal Bureau of Investigation laboratory. They may or may not be important, but we see no reason why defendant may not examine them to determine for himself if they are what the State says they are.

This requires no departure from the rationale of State v. Burris, supra, State v. Stump, supra, and State v. White, supra. While the items were not themselves presented before the grand jury and did not become exhibits filed with the minutes, they did nonetheless play an important part in the State's presentation in securing, first, a bind-over and then an indictment. Four police officers testified, either at the preliminary hearing or before the grand jury, concerning this physical evidence—its description, its location when seized, and its subsequent testing by the Federal Bureau of Investigation.

That the officers simply *told* about this instead of *producing* the evidence itself as exhibits does not change defendant's plight one bit. It is still evidence upon which the indictment was, in part, based. Furthermore, assuming their materiality, all the items sought to be examined would themselves be admissible at defendant's trial, which is one of the tests sometimes used to determine his right to pre-trial inspection.

■ In State v. White, supra, we said a defendant was entitled to know the contents of a document the State intends to use against him. We believe this applies with equal force to his right to know the physical characteristics of real evidence the State expects to use against him.

This rule is one which is gaining favor with more and more courts each year. 12 Stanford Law Review, 293, 299; Petition of Di Joseph, 394 Pa. 19, 145 A.2d 187, 188; State v. Oldham, 92 Idaho 124, 438 P.2d 275, 278; State ex rel. Mahoney v. Superior Court, 78 Ariz. 74, 275 P.2d 887, 890; State v. Superior Court, 106 N.H. 228, 208 A.2d 832, 833, 7 A.L.R.3d 1; People v.

Tribbett, 90 Ill.App.2d 296, 232 N.E.2d 523, 525; People v. Preston, 13 Misc.2d 802, 176 N.Y.S.2d 542, 548. See also cases collected in Annotation, 7 A.L.R.3d 1, 57.

■ III. We reach the same result in dealing with defendant's request for a copy of the autopsy report. The autopsy was performed under statutory authority. Section 339.6, Code of Iowa, 1966. The report is made admissible in evidence by section 339.9, which also provides the person preparing such report may be subpoenaed as a witness "in any civil or criminal case by any party to the cause."

It might well be argued defendant was entitled to a copy of the autopsy report under chapter 106, Laws of the Sixty-Second General Assembly, (Chapter 68A, Iowa Code Annotated.) However, we do not base our decision on that statute. Fundamental fairness requires the State to produce the report so that defendant may prepare to meet its findings in an orderly and effectual fashion.

In support of this conclusion see State v. Thompson, 54 Wash.2d 100, 338 P.2d 319, 322; State v. Olsen, 54 Wash.2d 272, 340 P.2d 171, 173; State v. Cook, 43 N.J. 560, 206 A. 359; State v. Williams, 183 Neb. 257, 159 N.W.2d 549; People v. Stokes, (General Sessions Court), 24 Misc. 2d 755, 204 N.Y.S.2d 827, 835; State v. Superior Court, 106 N.H. 228, 208 A.2d 832, 833, 7 A.L.R.3d 1; Tate v. State, 219 Tenn. 698, 413 S.W.2d 366, 369; Silver v. Sobel, 7 App.Div.2d 728, 180 N.Y.S.2d 699, 700; State v. Foster, 242 Or. 101, 407 P.2d 901, 903. See also Annotation at 7 A.L.R. 3d 145 for cases both allowing and refusing admission of autopsy reports.

■ IV. We agree with the trial court, too, in ordering production of the F.B.I. report of its analysis of items of physical evidence, including clothing, samples of hair, scrapings from the hands and fingernails of both the defendant and the deceased, and fingerprints taken from various places in the victim's apartment.

The need to examine such reports before trial is all the more urgent because they are invariably based on highly technical findings and are presented by well-qualified experts. Failure to afford defendant a reasonable pre-trial opportunity to meet such evidence by a cross-examination based on adequate factual background, by producing his own experts, or by some other means, results indeed in what has been called "trial from ambush." State v. Thompson, 54 Wash.2d 100, 338 P.2d 319, 324. Here, again, as noted in Division II, the reasons usually advanced in opposition to discovery do not apply. F.B.I. reports cannot be changed by allowing defendant to see them; and the twin specters of perjury and intimidation have no place in considering what the proper rule should be.

We hold the trial court's order to produce these reports was a proper exercise of its discretion to assure defendant a fair trial.

This holding has considerable support from other jurisdictions. State v. Thompson, supra, Walker v. Superior Court, 155 Cal.App.2d 134, 317 P.2d 130, 133, 134; State ex rel. Sadler v. Lackey, Okl.Cr., 319 P.2d 610, 614; People v. Stokes, 24 Misc.2d 755, 204 N.Y.S.2d 827, 835; State ex rel. Helm v. Superior Court, 90 Ariz. 133, 367 P.2d 6; Layman v. State, Okl.Cr., 355 P.2d 444, 448; State ex rel. Wagner v. Circuit Court, 60 S.D. 115, 244 N.W. 100; State v. Cook, 43 N.J. 560, 206 A.2d 359, 364; People v. Bradford, 54 Misc.2d 54, 281 N.Y.S.2d 480, 483. As examples of contra holdings see Bosley v. State, 218 Tenn. 134, 401 S.W.2d 770, 771, and Kinder v. Commonwealth, Ky., 279 S.W.2d 782, 784. See also 12 Stanford Law Review 293, 307, and 33 F.R.D. 55, 90.

V. Until now we have been dealing with physical evidence and scientific reports setting forth information obtained from that evidence.

Defendant also seeks copies of statements made to the police by all persons the State expects to call as witnesses at his trial.

He also claims a right to inspect and copy "the investigation reports made by officers McDermott, Walker, Vanous, and Driscoll concerning their investigation into the crime alleged in the indictment."

This presents an entirely different problem, one which goes to the heart of the puzzle as to how courts can reach the delicate balance essential to guarantee *both* a defendant and the State a fair trial.

Virtually no states—not even California, which perhaps has more liberal discovery rules than any other jurisdiction—allow a defendant, without a showing of necessity, to have statements of witnesses before trial. People v. Cooper, 53 Cal.2d 755, 3 Cal.Rptr. 148, 349 P.2d 964, 973. At the same time almost all permit him access to statements, if necessary for cross-examination, after a witness has testified for the prosecution. Until then, it is generally held there is no need for a defendant to have the statement of a witness, since it is not itself admissible in evidence and could not be used for any purpose except impeachment. There are many critical of this rationale, but there is also solid support for it. 23 C.J.S. Criminal Law § 955(2) (b), page 791; 42 Neb.Law Review 127, 150, 151; State ex rel. Mahoney v. Superior Court, 78 Ariz. 74, 275 P.2d 887; State ex rel Byrne v. Circuit Court, 16 Wis.2d 197, 114 N.W.2d 114, 115; Mabry v. State, 40 Ala.App. 129, 110 So.2d 250, 256; Russom v. State, Fla.App., 105 So.2d 380, 382; Kinder v. Commonwealth, Ky., 279 S.W.2d 782, 784; Bellew v. State, 238 Miss. 734, 106 So.2d 146; State v. White, 9 Ohio App.2d 271, 224 N.E.2d 377, 380; State v. Hutchins, 51 Del. 100, 138 A.2d 342, 346; State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330, 340, 344; People v. Graziano, 46 Misc.2d 936, 261 N.Y.S.2d 546; People v. Mami, Co.Ct., 214 N.Y.S.2d 788, 789; State v. Funicello, 49 N.J. 553, 231 A.2d 579, 597. See also 12 Stanford Law Review 293, 314.

A few recent decisions show beginnings of a shift away from this principle. State v. Tate, 47 N.J. 352, 221 A.2d 12; People v. Bradford, 54 Misc.2d 54, 281 N.Y.S.2d

480, 483; State v. Zimnaruk, 128 Conn. 124, 20 A.2d 613, 614.

■ However, whether condemned as "mere fishing expeditions," "attempts to rifle the prosecutor's file," or "requests for the State's work product," the overwhelming weight of authority is against such disclosure. We hold the trial court abused its discretion in ordering the State to deliver copies of the statements of all witnesses expected to testify at defendant's trial.

We do not foreclose the possibility that a defendant may be entitled to a particular statement upon showing it is necessary to his proper defense. This is clear from State v. White, supra, Iowa, 151 N.W.2d 552, 553, 557. However, as said in People v. Cooper, supra, this must be more than "a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime."

VI. This is even more true of defendant's demand for copies of police investigatory reports. These necessarily cover a wide range of police activities. Under ordinary circumstances the investigation starts on a broad scale and gradually narrows itself as the officers zero in on prime suspects. There is much in the investigating officer's report which is his unsupported theory and much more which is hearsay and rumor. Furthermore the reports are frequently based on material—or tips—from informers, who may de despised by friend and foe alike but who are nevertheless sometimes indispensable to successful police work. A routine disclosure of their identity upon a defendant's request would instantaneously eliminate that necessary source of information. Here, too, we might add, lies the real threat of intimidation and reprisal which the opponents of discovery fear.

■ We hold the order requiring the State to produce copies of police reports was an abuse of discretion and that approval of such procedure would unreasonably and unnecessarily impede the investigatory process, thereby depriving the *State* of a fair trial. State ex rel. Corbin v. Superior Court of Maricopa County, 99 Ariz. 382, 409 P.2d 547, 548; Hackathorn v. State, Tex.Cr.App., 422 S.W.2d 920, 922; State v. Cardinale, La., 206 So.2d 510, 511; State v. Tackett, 78 N.M. 450, 432 P.2d 415, 418, 20 A.L.R.3d 1; People v. Whitehead, 68 Ill.App.2d 488, 216 N.E.2d 237; People v. Lighting, 83 Ill.App.2d 430, 228 N.E.2d 104; State v. Grunau, 273 Minn. 315, 141 N.W.2d 815; People v. Hoagland, 83 Ill.App.2d 231, 227 N.E.2d 111, 113; Anderson v. State, 239 Ind. 372, 156 N.E.2d 384, 385.

This is also consistent with our holding in State v. White, supra, 151 N.W.2d 552, 557.

■ We make one exception to our holding here, with reference to photographs of the decedent's body, taken both before and during the autopsy. What we have said in Divisions II, III, and IV is applicable to these pictures and defendant should be permitted to examine them in advance of trial.

VII. In summary, then, we approve the trial court's order permitting examination by defendant of the physical evidence referred to therein, including the photographs mentioned in Division VI. We further approve the order making available to defendant copies of the autopsy report and reports of tests conducted by the Federal Bureau of Investigation. The writ as to those portions of the trial court's order is annulled.

There is no dispute concerning the trial court's protective order setting forth the conditions under which defendant may inspect the physical evidence in question, and we hold it adequate to protect the evidence from the possibility of tampering or change. We direct that the evidence subject to inspection be made available to defendant's counsel not later than one week from the filing of this opinion.

For the reasons set out in Divisions V and VI, we disagree with the trial court as to the order which requires the State to produce statements of witnesses and police reports. Under the record here we find that portion of the order was an abuse of the court's discretion. The writ as to that part of the trial court's order is sustained.

Writ sustained in part and annulled in part.

All Justices concur, except BECKER, J., who concurs in the result.

BECKER, Justice (concurring specially).

I concur in the result.

The majority reverses the trial court's order to produce statements of witnesses secured by the State before trial. The trial court should also be affirmed on this issue. It is generally held a prosecutor cannot constitutionally withhold evidence favorable to the defendant. 7 A.L.R.3d 8, 32–36; 33 A.L.R.2d 1421, and later case service.

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, states: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

In Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 811, 17 L.Ed.2d 737, 760, Justice Fortas states: "* * *. My point relates, not to the defendant's discovery of the prosecution's case for purposes of preparation or avoidance of surprise, which is dealt with in Rule 16, but with the State's constitutional duty, as I see it, voluntarily to disclose material in its exclusive possession which is exonerative or helpful to the defense—which the State will not affirmatively use to prove guilt—and which it should not conceal."

There is a basic inconsistency between recognition of the principle that suppression of evidence favorable to defendant violates due process and a refusal to allow a defendant to discover the evidence uncovered by the State. What we really say is: "The defendant can seek and obtain a new trial *if by accident* he discovers that favorable evidence has been suppressed." It does little good to recognize a right but deny the tools to implement that right.

State v. Fowler, 101 Ariz. 561, 422 P.2d. 125, 127 states: "* * *. Both prosecutors and the police, as public officers acting on behalf of the state, are sworn to uphold the law and are duty bound to protect the rights of the innocent as well as to prosecute the guilty. Their primary duty is not to convict, but to see that justice is done. Canon 5, Canons of Professional Ethics. A prosecutor who fails to reveal evidence that clearly would aid the accused's defense would seem to have lost sight of his proper objective. Should his failure be a deliberate attempt to employ defendant's unknowingness to the prosecution's own advantage, his actions would become particularly reprehensible. * * *.

"A man faced with the possible prospects of losing his life or being subjected to an extended prison term should not be denied, at the whim of the state, evidence which may be vital to his defense. A defendant's right to a fair trial must not be regarded lightly. * * *."

I would agree, at least at this point, with the majority's refusal to allow discovery of police reports containing the officer's impressions. But here we are not talking about impressions. We are talking about statements made by witnesses. They should be produced, at least as to witnesses that the state has not indicated they intend to use.