**Geraldine BRYANT, Plaintiff-in-Error,**

**v.**

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

March 16, 1976.

Certiorari Denied by Supreme Court
July 26, 1976.

Norman D. Lane and Harry Lester, Nashville, Dave A. Alexander and Mark Hartzog, Franklin, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, Elmer D. Davies, Jr., Dist. Atty. Gen., Franklin, for defendant-in-error.

## OPINION

DWYER, Judge.

This appeal from a conviction for murder in the second degree with resulting punishment of confinement for not less than ten years nor more than ten years is before us in compliance with the mandates of our Supreme Court as outlined in *Bryant v. State,* Tenn., 527 S.W.2d 742 (1975).

In evaluating the assignments of error urging the insufficiency of the evidence, we

will summarize the evidence as found from our review.

The deceased, the husband of the plaintiff-in-error, expired from a gunshot wound inflicted as he lay asleep in bed on the early morning hours of March 5, 1972. The Williamson County Sheriff received a call from the plaintiff-in-error to come to the residence of the deceased on Edmondson Pike in Williamson County around 2:30 a. m. Upon his arrival, he was admitted into the house by Mrs. Bryant who was clad in a nightgown which had blood on the front. When the sheriff entered the bedroom, he observed the deceased lying on his right side on the left side of a king size bed. He noticed a large quantity of blood on the bedclothes, the bed, and the head of the deceased. He noted a hole in the back of the victim's head located "3 to 31½ inches" to the rear of the left ear and down a bit, near the center of the neck. As he described it, a ragged, jagged exit wound was located above the center of the right eyebrow. From this exit wound he observed a portion of the brain protruding. He also noted a slit in the pillow casing to the right of the deceased's face and a bullet hole in the bedroom wall, both indicating a straight line path which the bullet followed.

There was a 357 magnum Ruger pistol with the butt inside the decedent's right hand with the muzzle pointing toward the ceiling. It was evident to the sheriff that Mr. Bryant was dead. It was also developed that the covers were up around decedent's shoulders. A bone fragment was observed on the floor. He questioned Mrs. Bryant and it was disclosed that only the two of them were in the home at the time of the death of Mr. Bryant. When he asked Mrs. Bryant if she shot her husband her reply was a denial. The sheriff did not question her anymore.

At the trial it was developed through expert testimony from a prominent neurosurgeon that in his opinion the bullet had traversed the pons of the brain and that death was instantaneous. That if the wound had been self inflicted from the rear it would have been impossible for the decedent to have then placed the pistol in front of him or to pull the covers up over him. In his opinion, due to the type powder burns on the entry wound, the weapon had to have been held a minimum of six inches from the head and a maximum of three feet.

The primary thrust of the state's case was that it would have been a physical impossibility for the deceased to have held the gun (a rather lengthy weapon) in the position required to have self inflicted the wound under these circumstances.

The plaintiff-in-error testifying in her own behalf related that she and her husband had been separated for a period of a month. That he had returned home that date in order to effect a reconciliation. That they had been out to dinner until approximately 9:00 p. m. and after returning home had retired and had intimate relations after which she fell asleep. She further testified that because of the deceased drinking the act of intercourse was unconsummated. That she was awakened by a loud noise, felt an object in the bed which she found to be the pistol, turned on the light, and saw blood on her husband. That she tried to help him and may have picked up the pistol and placed it in his hand. That she did not shoot and kill her husband. In other words, the decedent took his own life.

The evidence also reflects that plaintiff-in-error was the beneficiary of decedent's estate.

We think the evidence is sufficient to sustain the verdict. It must be remembered that on appeal we look at the evidence in the light as accredited by the verdict of the jury which places the burden on the plaintiff-in-error to show that the evidence preponderates against her guilt and in favor of her innocence. *McBee v. State,* 213 Tenn. 15, 19, 372 S.W.2d 173 (1963). The jury has rejected the testimony of the plaintiff-in-error that the wound was self inflicted. With the rejection of her version, coupled with her statement that they were alone, the circumstances outlined unerring-

ly point the finger of guilt to her alone. We are also satisfied that the cause of death, even in the absence of a doctor examining the body, has under our narration been overwhelmingly established. *State v. Townsend,* Tenn., 525 S.W.2d 842, 843 (1975). The use of a deadly weapon supplies the necessary ingredient of malice to support murder in the second degree. *Witt v. State,* 46 Tenn. 5, 8 (1868). Under this proof, we are concededly at a loss as to why the jury was so lenient.

■ With our finding that the evidence is sufficient, her assignment contending the trial court erred in overruling her motion for a directed verdict is overruled. The adjunct contentions to that motion, to wit, the lack of fingerprints on the weapon linking her to the crime and the failure of the state to take tests to determine whether she fired the weapon we also find to have no merit.

The defendant next urges that the trial court erred in allowing over objection the expert testimony of the neurosurgeon and in allowing rather lengthy testimony as to his qualifications when that fact was agreeable to her to be stipulated.

■ The argument is advanced that the doctor's opinion testimony was not predicated on facts in the record. The allowance of expert testimony is within the discretion of the court, *Murray v. State,* 214 Tenn. 51, 55, 377 S.W.2d 918, and we think that the court exercised that discretion soundly in this instance. Additionally, establishment of an expert witnesses' qualifications is a necessary predicate for the allowance of his testimony. *Pruitt v. State,* 216 Tenn. 686, 393 S.W.2d 747, 751 (1965).

We think there was no invasion of the province of the jury by allowing the doctor, who had unlimited World War II and Korean Conflict experience in the treatment of head wounds, to express his opinion from hypothetical questions based upon facts (which we will later outline) in the record and photographs of the decedent.

We are satisfied that the cause of death had been clearly established. It is also clear from the evidence that the entry wound was in the back of the head and the exit wound was in the front. The doctor expressed his opinion based upon the angle of the wounds from entry to exit that the bullet had traversed the pons of the brain which would mean instantaneous death. That if that had occurred the decedent could not have then placed the pistol in front of him and pulled the covers over his shoulders. The doctor unequivocally related he could not say that the wound was not self inflicted, which was the ultimate question for the jury. He could and did properly relate, however, that in his opinion, based on facts in hypothetical questions and the pictures, the dark discoloration encircling the entry wound was not a contact wound where the muzzle of the gun is in contact with the skin. Based upon the fact that free skin was between that discoloration and the wound itself, the doctor stated that in his opinion the weapon was held at least a minimum of six inches from the head and a maximum of three feet. We think the doctor's opinions were factually based and appropriately admitted in this instance. *Moon v. State,* 146 Tenn. 319, 365, 368, 242 S.W. 39 (1921).

■ The treatment of the above assignment justifies the allowance of the photographs into evidence. *Gordon v. State,* Tenn.Cr.App., 478 S.W.2d 911, 917 (1972). This assignment is overruled.

■ We find no abuse of the trial court's discretion in allowing into evidence a diagram drawn by the county coroner depicting the entrance wound and the powder burns at the time he examined the wounds. It was not drawn to scale but represented as closely as possible the wound and powder burns as he viewed them on the victim. We find no error. Wharton's Criminal Evidence, 13th Ed., § 641. The assignment is overruled.

■ We find no error in admission of the sheriff's questioning of plaintiff-in-error absent the *Miranda* warning during the investigation on the scene. The sheriff, we think, was making a proper on-the-scene investigation when he asked her three ques-

tions about (1) who was in the home at the time; (2) her location; and (3) whether she shot her husband. No further questions were asked.

As the United States Supreme Court clearly emphasized in *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):

"The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subject to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way."

\* \* \* \* \* \*

"Our decision is not intended to hamper the traditional function of police officers in investigating crime. See *Escobedo v. State of Illinois,* 378 U.S. 478, 492, 84 S.Ct. 1758, 1765, 12 L.Ed.2d 977. . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact finding process is not affected by our holding. . . . In such situations the compelling atmosphere inherent in the process of in-custody interrogations is not necessarily present." 86 S.Ct. at 1629.

In the instant case, the sheriff had been called by the defendant to the home where the death occurred. She was not in custody or deprived of leaving the premises. While the officer acknowledged that anyone that may have been in the house at the time was a potential suspect, we do not think, under the circumstances, the questioning had proceeded beyond a proper on-the-scene investigation. *Tate v. State,* 219 Tenn. 698, 706, 413 S.W.2d 366 (1967); *State v. Morris,* 224 Tenn. 437, 456 S.W.2d 840 (1970). Furthermore, we are not persuaded that this line of questions played any part in forcing her to testify when her responses were completely compatible with her defense. This assignment is overruled.

The plaintiff-in-error urges the court erred in allowing the attorney general to peruse notes of her retained private investigator and to cross examine about in-

formation therein. The investigator in testifying used his diary notes to refresh his memory. The attorney general asked to view those notes and based upon them attempted to cross examine the investigator. At the out of the presence of the jury hearing on this matter, the court sustained the defendant's object to the use of the notes by the attorney general. In the absence of any designation by her that the use of the notes aided the state to her detriment, we find no error. This assignment is overruled.

Lastly, the urging is advanced that the permitted use by the state of a simulated bedroom scene, replete with dummy, bed, mattress, springs, and wallboard, which were not exactly the same furnishings and not exactly the scale, was prejudicial. Both the state and the plaintiff-in-error relied upon *Hughes v. State,* 126 Tenn. 40, 148 S.W. 543 (1912) to sustain their respective positions of being competent and prejudicial.

We read *Hughes* in the light of permitting this type exhibit when it aids the witness to better illustrate his testimony to the jury. This assignment being overruled, the judgment of the trial court is affirmed.

GALBREATH and RUSSELL, JJ., concur.