IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

APRIL 1998 SESSION

FILED

January 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 02C01-9709-CC-00337 |
| | ) | |
| Appellee | ) | |
| | ) | MADISON COUNTY |
| V. | ) | |
| | ) | HON. FRANKLIN MURCHISON, |
| TIFFANY LAFONZO BETTS, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Second Degree Murder) |
| | ) | |
| | ) | |

For the Appellant:

George Morton Googe
District Public Defender

Daniel J. Taylor
Assistant Public Defender
227 W. Baltimore Street
Jackson, TN 38301
(At trial)

Clifford K. McGown, Jr.
113 N. Court Square
Waverly, TN 37185
(On appeal)

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Elizabeth T. Ryan
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

James G. Woodall
District Attorney General

Alfred L. Earls
Assistant District Attorney
225 Martin Luther King Dr.
Jackson, TN 38302

OPINION FILED: _____

AFFIRMED AS MODIFIED

William M. Barker, Special Judge

**OPINION**

The appellant, Tiffany Lafonzo Betts, appeals as of right his convictions in the Madison County Circuit Court of second degree murder and unlawful possession of a weapon with the intent to employ it in the commission of a criminal offense. He received respective sentences of twenty years and eleven months, twenty-nine days. The sentences were ordered to be served concurrently.

On appeal, appellant raises the following four issues:

(1) whether the trial court erred in admitting photographs of the victim and crime scene;

(2) whether the trial court erred in permitting Richard Siler to testify as an expert witness;

(3) whether the trial court erred in allowing the State to impeach the testimony of an unavailable witness with previous inconsistent statements; and

(4) whether the evidence is sufficient to support the convictions.

After a thorough review of the record before us, we conclude that the trial court committed no reversible error and we affirm its judgment.

On April 8, 1993, appellant was visiting with friends at 98 Davis Street in Jackson. At some point during the afternoon, Kenneth Avery, the victim, and Hiawatha Scott arrived at the residence. The victim owed appellant money and appellant was expecting to be repaid that day. When the victim arrived, appellant asked him for the money. When the victim responded that he did not have the money, an argument ensued.

The argument began inside of the home but later moved outside in the yard. Appellant was armed with a double-barreled, sawed-off shotgun. The victim was not armed. However, the victim grabbed appellant below the knees, picked him up to shoulder height, and threw him down. The two men continued arguing and the victim began to walk towards his van parked on the curb. Suddenly, the victim turned around and began walking towards appellant. As he approached, the appellant shot

2

him in the chest with the shotgun.  Appellant ran from the scene, but turned himself in to authorities later that day.  The weapon was never recovered.

Dr. O. C. Smith performed an autopsy on the victim.  He testified that the victim died from a single gunshot wound to the chest.  The ammunition went through his right lung and into the heart, leaving a hole measuring 1.95 inches by 1.77 inches.  The shot was fired from more than three feet away, but Dr. Smith was unable to determine the gauge of the weapon.  Dr. Smith testified that the pellets entered the victim at an angle from right to left, indicating that the victim was not directly facing the shooter.  He further testified that the victim's blood alcohol content was .23% and he detected cocaine in his urine.  However, since no cocaine was found in the victim's bloodstream, Dr. Smith testified that the victim was not under the influence of that drug at the time of his death.

Appellant pursued a theory of self-defense at trial.  Three defense witnesses testified that the victim was armed with a box cutter or utility knife and had the blade exposed when he turned and walked towards the appellant.  They each testified that appellant never got upset during the argument and never pointed the gun at the victim until the shot was fired.  Two defense witnesses also testified that appellant told the victim, during the argument, to leave and forget the money.  None of the witnesses saw the victim with a weapon until he turned around and approached appellant.  All eyewitnesses who testified at trial, including State's witness Hiawatha Scott, were impeached with prior inconsistent statements and prior convictions.

The twenty-two-year-old appellant testified that he was nineteen when the offense was committed.  He said that the victim owed him about $40 and he was expecting the victim to pay him that day.  When the victim arrived, appellant asked for the money.  The victim stated he did not have it and asked to borrow more money, but appellant refused.

Appellant testified that he was not upset by the victim's request.  Because he could tell that the victim had been drinking, he began "picking on" him and trying to

3

agitate him. He stated that the victim got upset and raised his voice. According to appellant, the victim told Hiawatha Scott to "go get his piece" and he thought the victim was talking about a gun. The victim continued to ask to borrow more money and eventually asked appellant to go outside. Appellant testified that as he walked out the door, someone nudged him and handed him a shotgun.

Appellant said that they continued arguing once outside and the victim picked him up and threw him down. At that point, he stated he knew the victim was not "playing" any more and became scared. He asked the victim to leave, but he continued to argue. Appellant said that the victim turned and began walking towards his van. Suddenly, he turned around with a razor in his hand and began walking quickly toward appellant. After the victim got "so close," he fired the shot. Appellant testified that he was in fear and believed the victim was going to hurt him.

Photographs taken at the scene reveal a utility knife on the ground and a trail of blood from this point approximately 36 feet to the location of the victim's body. There were no visible signs of blood on the knife. The photographs also reveal $15 in cash which had blood on it next to the deceased's body.

Although indicted for first degree premeditated murder, the jury found appellant guilty of the lesser offense of second degree murder. Appellant was later sentenced to twenty years as a Range I offender on that conviction. The jury also found appellant guilty of unlawful possession of a deadly weapon with intent to employ it in the commission of a criminal offense, for which he received a concurrent sentence of eleven months, twenty-nine days.[1] See Tenn. Code Ann. §39-17-1307(c)(1) (1991).

---

[1]Unlawful possession of a weapon with intent to employ it in the commission of a criminal offense is a Class E felony. Tenn. Code Ann. §39-17-1307(c)(2) (1991). However, the judgment form for that conviction reflects it is a Class A misdemeanor and the trial court sentenced appellant accordingly. We modify that sentence to one year, the minimum sentence for a Class E felony. Because the sentences are concurrent, no prejudice inures to the appellant.

4

Appellant first contends that the trial court erred in admitting gruesome photographs of the crime scene because their prejudicial effect outweighed the probative value. He argues that the photos added nothing to the jury's knowledge because detailed testimony regarding the crime scene, as well as a diagram, were introduced. We conclude the pictures were properly admitted.

The admissibility of photographic evidence is within the sound discretion of the trial court. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). Admissibility hinges upon relevance and a determination that the probative value of the photographs is not outweighed by the danger of unfair prejudice. Id.; see also Tenn. R. Evid. 401, 403. On appeal, we will not reverse a decision to admit evidence absent a clear showing of abuse of discretion. Banks, 564 S.W.2d at 949. The record before us demonstrates no such abuse.

The State introduced several photographs taken at the crime scene, although not all of them included the victim. They depicted the victim's body beside his van, as well as other items found nearby. They also showed a trail of blood from the location of the shooting to the van where the victim collapsed. There was also a picture of a utility knife found in the grass. The trial court found that the pictures were material to show the position of the body and items of evidence and their relationship to one another. We agree.

Investigators testified that the shooting did not occur at the location where the body was found. The utility knife was found thirty-six feet from the body and they were connected by a trail of blood. The photographs were necessary for the jury to gain a complete understanding of the events which transpired at the crime scene, making their probative value great. The trial court was careful to not admit any repetitious photos. Since, the prejudicial effect did not substantially outweigh the probative value, the trial court did not abuse its discretion.

Appellant next argues that the trial court erred in allowing Richard Siler to testify as an expert witness on shotguns. He argues that Siler was not qualified to testify as an expert and the admission of his opinion was in violation of Tennessee Rule of Evidence 702.

After the defense rested, the State sought to introduce rebuttal testimony from Sergeant Richard Siler of the Jackson Police Department's Tactical Unit. The State sought to elicit testimony from Siler that a shotgun will not fire unless the hammer is cocked. The assistant district attorney argued that it was proper rebuttal because appellant testified that he never cocked the hammer on the shotgun; he just pulled the trigger.

The trial court stated that the witness was "a borderline expert -- you know. It is not really exactly an expert's testimony. He is not going to give his opinions, as I understand it. He is going to state facts about it. I don't call him an expert." Siler was thereafter permitted to testify and the following colloquy occurred:

> Q.     Do you know of any type of break-action double barrel shotgun, that once it is broken open and closed, will simply fire by pulling the trigger and nothing more?
>
> A.     The double barrels that I have had dealings with – once you breech the shotgunn [sic] to load the rounds -- once you close the breech, it cocks the weapon itself because there are no external hammers on the weapon unless it is a real old model shotgun. Once the breech is closed, it will cock the hammers, but there is a safety that is usually mounted on top of the shotgun that engages -- that in order to fire that weapon, that safety has to be taken off to fire the weapon.
>
> Q.     And that has to be done manually?
>
> A.     Yes, sir.
>
> Q.     Okay. If it is not that type of shotgun, do you have to cock the hammer back?
>
> A.     Any other type, such as that, would have a hammer – an external hammer. The hammer would have to be cocked before the weapon can be fired.
>
> Q.     That is manual?
>
> A.     That is manual; yes, sir.

6

The admission of opinion testimony from lay witnesses is restricted by our rules of evidence. Tenn. R. Evid. 701. However, if a witness possesses scientific, technical, or specialized knowledge, he or she may qualify as an expert and opinion testimony may be proper. See Tenn. R. Evid. 702. Questions concerning the qualifications, admissibility, relevancy, and competency of expert testimony are matters which rest within the sound discretion of the trial court. State v. Begley, 956 S.W.2d 471, 475 (Tenn. 1997); State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993). Determining the qualifications of an expert is a predicate to admitting such testimony. Bryant v. State, 539 S.W.2d 816, 819 (Tenn. Crim. App. 1976).

The trial court was hesitant to rule that Siler was going to offer expert testimony and it made no finding about his qualifications. In fact, the State did not attempt to qualify the witness as an expert during its direct examination. However, a reading of Siler's testimony reveals that he offered testimony requiring specialized knowledge that would have been appropriate only from an expert on firearms. It was error to admit his testimony without first considering his qualifications as a firearm expert.

Although the testimony was admitted in error, we cannot say that it affected the outcome of appellant's case. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). Appellant was not prejudiced by the testimony because it was wholly irrelevant to his theory of self-defense. He never denied firing the fatal shot. Therefore, whether he cocked the hammer before firing the shot was of no consequence.[2] Appellant is entitled to no relief.

_____

[2]While the State argues on appeal that the expert testimony was relevant to show the premeditation necessary for first degree murder, appellant was acquitted of that charge. Hence, he can claim no prejudice in that regard.

Appellant next argues that the trial court erred in allowing the State to impeach the testimony of an unavailable defense witness with prior inconsistent statements. Robert James Johnson was unavailable to testify at appellant's trial, but had testified at an earlier proceeding.[3] The State and defense counsel agreed that Johnson's prior testimony could be introduced and it was read into the record at trial.

At the close of defense proof, the prosecutor informed the trial court that the State wished to impeach Johnson's testimony using prior inconsistent statements given to Officer Leslie Hallenback of the Jackson Police Department. After hearing argument on the issue, the trial court allowed Officer Hallenback to read the prior statements into the record.

The trial court permitted the impeachment of Johnson's prior testimony pursuant to Rule 806 of the Tennessee Rules of Evidence. That rule states:

> When a hearsay statement has been admitted in evidence, the credibility of the declarant may be attacked and, if attacked, may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

Tenn. R. Evid. 806. While acknowledging that the rule and case law supports the admission of the inconsistent statements, appellant, without explanation, insists that the trial court erred. We disagree.

The prior testimony of Johnson introduced by the defense was hearsay admitted pursuant to Tennessee Rule of Evidence 804(b)(1). The clear language of the Rule 806 permits the impeachment of a hearsay declarant, just as if the declarant had been a trial witness. The Advisory Commission Comments explicitly state that impeachment using prior inconsistent statements is permitted under the rule and

---

[3]The prior testimony was given during appellant's first trial on these charges in September 1994, which ended in a mistrial due to a hung jury. The instant convictions resulted from a second trial in October 1996.

eliminates the traditional requirement that the declarant be given the opportunity to explain or deny. Tenn. R. Evid. 806 Advisory Commission Comments; State v. Philpott, 882 S.W.2d 394, 406 (Tenn. Crim. App. 1994).

The statements introduced on rebuttal were given to Officer Hallenback by Johnson on two occasions during her investigation of Kenneth Avery's death. In certain respects, each of these statements were different from the testimony read into the record. As a result, it was proper for the State to impeach Johnson, the hearsay declarant, by using his inconsistent statements. See State v. Zirkle, 910 S.W.2d 874, 891 (Tenn. Crim. App. 1995); Phillpott, 882 S.W.2d at 406. Appellant has provided no rationale, nor have we found any, to conclude that the trial court erred.

In his final issue, appellant contends that the evidence was insufficient to support his convictions for second degree murder and unlawful possession of a weapon. The record before us clearly supports both convictions.

With regard to the murder conviction, appellant's challenge to the sufficiency relates to his dissatisfaction with the jury's decision to reject his theory of self-defense. Whether or not a defendant acted in self-defense is a question for the trier of fact to determine. See Arterburn v. State, 391 S.W.2d 648, 653 (Tenn. 1965); State v. Fugate, 776 S.W.2d 541, 545 (Tenn. Crim. App. 1988). Whether an accused acted in self-defense requires the jury to determine whether the defendant's belief in imminent danger was reasonable, whether the force used was reasonable, and whether the defendant was without fault. State v. Renner, 912 S.W.2d 701, 704 (Tenn. 1995).

Consistent with common law, our self-defense statute only permits a person to use the force reasonably necessary to protect himself or herself. See Tenn. Code Ann. §39-11-611 Sentencing Commission Comments; Long v. State, 443 S.W.2d 476, 479 (Tenn. 1969). Therefore, the defense is not available if the defendant uses excessive force. Id.

9

The state contended in final argument that the absence of blood on the utility knife indicated it was not in the victim's hand at the time of the shooting and had fallen out of his pocket earlier in the confrontation. The state further contended the victim was clutching only the money in his hand which was corroborated by the money with blood on it found by his body.

The state further argued that the appellant was the initial aggressor who provoked the victim's actions, and the appellant did not abandon the encounter or clearly communicate to the victim his intent to do so. Self-defense is unavailable under these circumstances. *See* Tenn. Code Ann. § 39-11-611(d).

Admittedly, this is a close question. Nevertheless, this Court must view the evidence in a light most favorable to the state. We are unable to say that a rational jury could not adopt the state's theory of the homicide. *See* Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Tenn. R. App. P. 13(e). This is especially true in light of the state's proof that the appellant armed himself with a sawed-off shotgun prior to any physical confrontation. Appellant's argument is without merit.

Moreover, we find the evidence sufficient to support appellant's conviction for unlawful possession of a weapon. The record clearly demonstrates that appellant possessed a deadly weapon, i.e. a double-barreled, sawed-off shotgun. His intent to employ it in the commission of an offense was evidenced by the fact that he was armed during the course of an argument which culminated in his shooting the victim. See Tenn. Code Ann. §39-17-1307(c)(1) (1991).

We have considered the entire record before us and conclude that the trial court committed no reversible error. We remand to the trial court solely for the correction of the judgment for unlawful possession of a weapon to reflect a Class E felony and a sentence of one year. The judgment of the trial court is affirmed in all other respects.

 

_____
William M. Barker, Special Judge

CONCUR:

_____
David G. Hayes, Judge


_____
Joe G. Riley, Judge

11