IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MAY SESSION, 1999

**FILED**

September 9, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| JAMES PHILLIP HUNTER, | ) | C.C.A. NO. 01C01-9805-CR-00216 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. SETH NORMAN |
| STATE OF TENNESSEE, | ) | JUDGE |
| | ) | |
| Appellee. | ) | (Post-Conviction) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

THOMAS F. BLOOM                        PAUL G. SUMMERS
500 Church Street                     Attorney General & Reporter
5th Floor
Nashville, TN  37219                  CLINTON J. MORGAN
                                      Counsel for the State
                                      425 Fifth Avenue North
                                      Nashville, TN  37243

                                      VICTOR S. JOHNSON
                                      District Attorney General

                                      KYMBERLY HAAS
                                      Assistant District Attorney
                                      Washington Square, Ste. 500
                                      Nashville, TN  37201-1649

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

**OPINION**

The petitioner, James Phillip Hunter, appeals the order of the Davidson County

Criminal Court denying his petition for post-conviction relief. The petitioner is presently

serving a life sentence as a result of his conviction for premeditated first degree murder in

1993. In 1997, the petitioner filed a post-conviction petition alleging, *inter alia*, ineffective

assistance of trial counsel. The trial court found no merit to any of the petitioner's claims

and accordingly denied the petition. On appeal, the petitioner claims that he received

ineffective assistance of counsel at trial and on appeal. After a thorough review of the

record before this Court, we affirm the trial court's judgment.

**I.**

**A. Trial**

In 1993, the petitioner was convicted after a jury trial for the premeditated murder

of Dewey Slanton. His conviction was affirmed by this Court on appeal. State v. James

Phillip Hunter, C.C.A. No. 01C01-9404-CR-00154, Davidson County (Tenn. Crim. App.

filed January 11, 1996, at Nashville), *perm. to app. denied* (Tenn. June 3, 1996). We recite

the relevant facts as set out by this Court on direct appeal:

> On January 8, 1993, Teresa Smoot was celebrating the birthday of
> her husband, Michael Smoot, at their residence. Ms. Smoot's brother,
> Ronald Fann, and the victim, Dewey Slanton, were present. Michael Smoot
> and the victim were drinking beer. The four watched television for a time
> before deciding to go to the Odyssey Club, where Ms. Smoot worked as a
> dancer. On their way, they stopped at a liquor store, where Ms. Smoot's
> husband and brother bought a "little bottle of something." The victim had
> also gone inside the store but did not purchase anything. The group
> continued their celebration at the club for a time, then took the victim home
> because he had to work the next day.
>
> The other three decided to visit another club, the Brass Stables, but
> changed their minds on the way and drove towards the Smoot home. As
> they entered the alley leading to their driveway, Ms. Smoot saw the victim,
> who lived in the neighboring apartments, looking over his shoulder and

motioning for her to stop. Ms. Smoot yelled, "Wait a minute," and was pulling into her driveway to park the car when she heard a gunshot. She then saw the defendant, who appeared to have something like the butt of a gun on his "back side," standing toward the front of her house. As she backed the car into the alley, she saw the victim clutch his stomach and chest and fall to the ground. Ms. Smoot ran to the victim, placed a pillow under his head and covered him with her coat and a blanket. Michael Smoot called 911; Ms. Smoot joined in the conversation, telling the dispatcher that the defendant had shot the victim. The defendant, who lived in the same apartment complex as the victim, went to his sister's house right after the shooting; he returned to his apartment a few minutes later.

Ms. Smoot, who conceded that the victim was a close friend, testified that he was not drunk. She stated that the victim had previously told her that he "had words" with the defendant over Debra Ryman, the victim's ex-girlfriend and a niece to the defendant.

. . . .

Susan Franks, of the Metropolitan Nashville-Davidson County Police Department, was the first officer to arrive at the scene of the shooting. The victim, wrapped in a blanket, appeared to be unconscious. Officer Franks learned that Smoot and Fann suspected the defendant as the assailant. When the ambulance arrived, she looked for evidence in the nearby apartment complex. A door to one of the apartments, that belonging to the victim, was open. The apartment was in disarray and there were two gunshot holes in the living room wall. As Officer Franks knocked on the door to the adjacent apartment, she saw that the door to a third apartment was open, investigated, and found the defendant sitting calmly inside. The defendant told Officer Franks that he had been asleep when the victim kicked in the door to his apartment and hit him in the jaw. He stated that he then took a shotgun from underneath his bed and shot the victim. Officer Franks found no cuts, bruises, or abrasions on the defendant and determined that the door had been kicked from the inside out, rather than the outside in.

. . . .

Homicide Detective Mike Roland took a statement from the defendant. The defendant, who described himself as nervous and upset, contended that after he had been attacked by the victim, he got his gun and went to the doorway of his apartment. While there, he fired two or three times at the victim who, by then, had fled some distance away but was coming back toward him. The defendant claimed that when he saw the victim fall, he put his gun away and went to his sister's house to call authorities. The defendant maintained that he had no idea why the victim initiated the attack. He asserted that he generally tried to stay away from the victim because, in part, the victim drank heavily and became violent when he did so.

. . . .

Dr. Mona Harlan, a forensic pathologist with the Davidson County Medical Examiner's Office, conducted the autopsy. She stated that the victim suffered multiple pellet wounds which extended from slightly above his

knees to the top of his head. There was no stippling of the skin near the wound. That led Dr. Harlan to conclude that the victim had not sustained the gunshot wound from close range. She estimated that at least fifteen feet would have separated the victim and the defendant when the victim was shot. The victim had abrasions on his hand, knee, and forehead, which Dr. Harlan believed could have been the product of a physical altercation, the victim's fall to the ground, or from pellets which had not penetrated the skin. Dr. Harlan also found that the victim's blood alcohol level was .14.

. . . .

The defendant, a sheet metal worker, testified that he had lived in his apartment at 128 Rains Road for approximately six months when the shooting occurred. He stated the victim lived in a nearby apartment with his niece and that they would occasionally invite him to eat dinner there. The defendant claimed that he and the victim had never had problems until the day of the shooting.

He testified that the victim had several guests at his apartment drinking that day. One of the guests had made a "smart" remark to the defendant, but the defendant claimed that he had ignored the comment. When he returned to his apartment, he turned on the television and fell asleep on the couch. The defendant claimed that the next thing he remembered was a loud banging at his door. When he answered, the victim, who smelled strongly of alcohol, struck him in the side of the face. The defendant contended that the victim, who had previously bragged about his fighting prowess, hit him about fifteen times. He testified that he retrieved his shotgun from underneath his bed only after he was hit in the back of the head; when he did so, the victim stood in the bedroom doorway and cursed at him. He maintained that the victim was only about fifteen or twenty feet outside the apartment by the time the shotgun had been loaded. The defendant claimed that the shotgun started "going off" only after the victim reached for something in his back pocket. He stated that he had not aimed his weapon before firing.

State v. James Phillip Hunter, *supra*, slip op. at 3-11.

### B. Post-Conviction Hearing

At the post-conviction hearing, the petitioner complained of trial counsel's failure to thoroughly investigate his case prior to trial. He testified that although he had only a ninth grade education, his attorney required him to make all of the decisions regarding trial strategy. The petitioner stated that his attorney never reviewed the state's case with him nor did he discuss trial strategy with him. He further claimed that his attorney only visited the crime scene once, which was on the second day of trial. The petitioner testified that counsel did not independently contact defense witnesses, and the only time counsel spoke with the petitioner's proposed witnesses was when the petitioner brought them to counsel's

office. He stated that trial counsel did not attempt to have scientific tests performed on any of the state's physical evidence.

The petitioner testified that he informed his attorney about his prior criminal record, including his prior arrests. He further stated that trial counsel was aware of the victim's prior criminal record as well as his propensity for violence.

George Duzane represented the petitioner at trial. Duzane testified at the post-conviction hearing that he had been practicing law since 1979, and at the time of trial approximately 30%-35% of his practice consisted of criminal cases. He stated that he spoke with the petitioner on many occasions concerning the state's case against him. Although he did not hire a private investigator, he spoke with the police officers investigating the case several times. He reviewed all of the discovery provided to him, filed various pretrial motions and visited the crime scene at least twice. Duzane testified that the petitioner made the decision as to which witnesses to call on his behalf, and he interviewed every witness that the petitioner suggested. However, he acknowledged that many of the defense witnesses offered testimony which was contrary to their respective statements to law enforcement authorities.

Because the petitioner claimed that he killed the victim in self-defense, Duzane attempted to present evidence of the victim's violent tendencies, especially after he had been drinking. However, the trial court would not allow him to present such testimony. Duzane admitted that he was able to elicit some testimony concerning the victim's prior convictions as well as his past violent behavior.

In a written order, the trial court found that the petitioner had not presented sufficient evidence supporting his claim that trial counsel was ineffective. The trial court concluded that trial counsel did not provide deficient representation, and the petitioner had not established how he was prejudiced by any of the alleged deficiencies. As a result, the trial court denied the petition for post-conviction relief.

From the trial court's order denying post-conviction relief, the petitioner now brings this appeal.

## II.

The petitioner argues that he received ineffective assistance of counsel in many respects. First, he claims that trial counsel erroneously failed to question him during his direct testimony regarding his knowledge of specific acts of violence committed by the victim. He asserts that counsel was ineffective for failing to appeal the trial court's ruling that prior bad acts committed by the victim were inadmissible. The petitioner also maintains that trial counsel was ineffective for failing to object to "expert" testimony presented by the state. He further insists that trial counsel ineffectively questioned him on direct examination regarding his prior convictions. Finally, the petitioner contends that trial counsel was ineffective for failing to conduct an adequate investigation of the case and for failing to procure favorable witnesses for the defense.

### A. Standard of Review

In post-conviction proceedings, the petitioner bears the burden of proving the allegations raised in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). Moreover, the trial court's findings of fact are conclusive on appeal unless the evidence preponderates against the judgment. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Campbell v. State, 904 S.W.2d 594, 595-96 (Tenn. 1995); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides, in part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." Similarly, Article I, § 9 of the Tennessee Constitution guarantees an accused "the right to be heard by himself and his counsel . . ."

Additionally, Tenn. Code Ann. § 40-14-102 provides, "[e]very person accused of any crime or misdemeanor whatsoever is entitled to counsel in all matters necessary for such person's defense, as well to facts as to law."

The United States Supreme Court articulated a two-prong test for courts to employ in evaluating claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court began its analysis by noting that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. When challenging the effective assistance of counsel in a post-conviction proceeding, the petitioner bears the burden of establishing (1) the attorney's representation was deficient; and (2) the deficient performance resulted in prejudice so as to deprive the defendant of a fair trial. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). This Court is not required to consider the two prongs of Strickland in any particular order. Harris v. State, 947 S.W.2d 156, 163 (Tenn. Crim. App. 1996). "Moreover, if the Appellant fails to establish one prong, a reviewing court need not consider the other." Id.

The test in Tennessee in determining whether counsel provided effective assistance at trial is whether counsel's performance was "within the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); see also Harris v. State, 947 S.W.2d at 163. In order to demonstrate that counsel was deficient, the petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 688, 104 S.Ct. at 2064; Harris v. State, 947 S.W.2d at 163.

Under the prejudice prong of Strickland, the petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. The mere failure of a particular tactic or strategy does not *per se* establish unreasonable representation. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). However, this Court will defer to counsel's tactical and strategic choices only where those choices are informed ones predicated upon adequate preparation. Id.; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

### C. Victim's Prior Bad Acts

The petitioner claims that trial counsel was ineffective in failing to properly question the petitioner at trial with regard to the victim's prior acts of violence. He argues that counsel questioned the petitioner generally about the victim's violent tendencies, but did not follow up with questioning regarding the petitioner's knowledge of specific violent acts committed by the victim. Furthermore, he claims that trial counsel was ineffective in failing to appeal the trial court's ruling that other defense witnesses could not testify regarding specific violent acts by the victim.

Tenn. R. Evid. 404(a)(2) provides:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with the character or trait on a particular occasion, except . . . [e]vidence of a pertinent character trait of the victim of crime offered by an accused or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

A defendant may testify as to his or her knowledge of recent acts of violence committed by the victim against others to establish the defendant's fear or apprehension of the victim prior to or during an assault. State v. Furlough, 797 S.W.2d 631, 648 (Tenn. Crim. App. 1990); *see also* State v. Hill, 885 S.W.2d 357, 361 (Tenn. Crim. App. 1994). Further, specific acts of violence by the victim are admissible to corroborate a defendant's assertion that the victim was the first aggressor.[1] State v. Furlough, 797 S.W.2d at 649.

The petitioner should have been allowed to testify as to specific acts of violent conduct committed by the victim. However, even if this Court were to find that trial counsel's performance was somehow deficient in not eliciting testimony regarding specific acts of violence committed by the victim,[2] the petitioner has not demonstrated how he was prejudiced by this deficiency. Indeed, the state introduced the petitioner's videotaped statement to law enforcement authorities wherein the petitioner told the investigating officer of his knowledge of two instances where the victim assaulted third persons. These are the instances of which the petitioner now complains he was not allowed to testify. The jury, thus, was able to hear that the petitioner feared the victim as a result of these prior violent acts. Thus, there does not appear to be any reason to believe the jury's verdict might have been different had the petitioner been allowed to testify at trial regarding these incidents.

The petitioner also complains that counsel was ineffective on appeal for failing to appeal the trial court's ruling that other defense witnesses could not testify as to prior violent acts committed by the victim. Once again, the petitioner has not established

---

[1] In State v. Hill, this Court held that when specific instances of conduct are admissible to corroborate the defendant's assertion that the victim was the first aggressor, the evidence is only admissible as part of the defendant's cross-examination of the victim. 885 S.W.2d at 363; *but see* State v. Ruane, 912 S.W.2d 766, 780-781 (Tenn. Crim. App. 1995) (holding that corroborative proof that the victim was the initial aggressor is outside the scope of Tenn. R. Evid. 404(a)(2) and 405; thus, third persons may testify as to specific instances of violent conduct committed by the victim on direct examination).

[2] Trial counsel attempted on numerous occasions to elicit testimony from various witnesses regarding the victim's propensity for violence and specific acts of violence committed by the victim. On most occasions, however, the trial court sustained the state's objection to this testimony.

prejudice. Numerous times during the trial, witnesses testified as to the victim's prior convictions, prior violent acts and general reputation for violence in the community.[3] Therefore, even had counsel appealed this issue, it is clear that any error would have been deemed harmless.[4] Because the petitioner has not demonstrated a reasonable probability that the result of the proceeding would have been different, the petitioner has not established how he was prejudiced. *See* Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

The petitioner has failed to carry his burden of showing that more extensive questioning regarding the victim's prior acts of violence would probably have changed the result of the trial. Therefore, this issue is without merit.

### D. "Expert" Testimony

In his next allegation of ineffective assistance of counsel, the petitioner contends that his attorney failed to object to Officer Read Majors' testimony. He argues that Officer Majors testified as an expert, but the state never qualified him as an expert. As a result, he alleges that trial counsel should have objected to Officer Majors' testimony and/or taken appropriate measures to correct the detrimental effects of such testimony.

Officer Majors of the Metropolitan Police Department was called to testify as a witness for the state. Majors was the firearms instructor for the Metro Police Department and was asked to perform tests on the shotgun which the petitioner used to shoot Dewey Slanton. Majors shot the weapon at a paper silhouette with both an open and a closed choke at various distances to demonstrate the shot spread patterns from different distances. The state was allowed to introduce the silhouettes as exhibits,

---

[3] Although the state objected to such testimony on several occasions, the trial court instructed the jury to disregard the testimony only once.

[4] Moreover, Duzane was not questioned at the post-conviction hearing as to his reasoning for failing to present this issue on appeal. The petitioner bears the burden of establishing that counsel's decision not to appeal this issue was deficient performance. "Generally, the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel." Campbell v. State, 904 S.W.2d 594, 597 (Tenn. 1995). Since it is possible that counsel believed such an issue would not have been fruitful on appeal, the petitioner has not established that counsel's performance was deficient in this regard.

while Majors testified as to whether the choke was open or closed and the approximate distance from which the shot was fired.

If a witness possesses scientific, technical, or specialized knowledge, he or she may qualify as an expert and opinion testimony may be proper. Tenn. R. Evid. 702. A necessary prerequisite to such testimony is the qualification of the witness as an expert. Bryant v. State, 539 S.W.2d 816, 819 (Tenn. Crim. App. 1976). In this case, however, Officer Majors did not give expert testimony. He merely explained the tests he conducted to the jury, and when the exhibits were passed to the jury, he informed them regarding the approximate distance from which the shot was fired. The trial court did not allow Officer Majors to state any opinion or draw any conclusions with regard to such testing. Thus, trial counsel was not ineffective for failing to object to Officer Majors' lack of qualifications. Furthermore, contrary to the petitioner's assertion, Duzane objected to Officer Majors' testimony on numerous occasions on several different grounds. The petitioner has not demonstrated that trial counsel was deficient in this respect, nor that he suffered prejudice as a result.

This issue has no merit.

### E. Petitioner's Prior Convictions

The petitioner next argues that trial counsel was ineffective when he questioned the petitioner regarding his prior convictions. Prior to the petitioner testifying, the trial court held a jury out hearing to determine whether the state could impeach the petitioner with a prior conviction for aggravated assault with the intent to commit a robbery. The trial court ruled that the state could question the petitioner with regard to such conviction. On direct examination, the following exchange occurred:

Q.      Were you convicted of a felony of aggravated assault with intent to commit robbery, back in 1980?

A.      Yes, sir. I was.

Q.      And is this the second time you've been in trouble?

A.          Yes, sir.  I have.  This is the only time, other than that one time.

On cross-examination, the prosecutor then questioned the petitioner regarding his prior arrests for assault, malicious destruction of property, assault and battery, and assault with an automobile.  The trial court found that the petitioner had "opened the door" to such questioning.

The petitioner complains that trial counsel's questioning opened the door to the prosecutor's questioning regarding the petitioner's prior arrests.  He claims that the "intense questioning obviously flustered [him] and destroyed his credibility in the eyes of the jury."  However, it was the petitioner's false answer to the question which "opened the door" to his prior arrests.  In taking the stand in his own defense, the petitioner was sworn to tell the truth, regardless of the questions posed to him.  We refuse to find trial counsel deficient as a result of his client's decision to testify untruthfully.  The petitioner has not established that trial counsel's performance was deficient in this regard, nor has he established that he suffered prejudice as a result.[5]

This issue is without merit.

### F. Failure to Investigate

In his final claim of ineffective assistance of counsel, the petitioner alleges that trial counsel did not conduct an adequate investigation of his case.  He argues that trial counsel did not adequately investigate the crime scene and counsel should have hired a private investigator.  He further claims that trial counsel failed to secure favorable witnesses for the defense.

With regard to the claim that trial counsel did not properly investigate the petitioner's case, the petitioner has failed to demonstrate what evidence further

---

[5] The petitioner claims that the prosecutor's cross-examination regarding his prior arrests destroyed the petitioner's credibility in the eyes of the jury.  During cross-examination, the petitioner could not recall whether he had been previously arrested.  Any loss of credibility would clearly be the result of the petitioner's lack of recollection in this regard.

investigation would have produced.  As a result, the petitioner has not shown how he was prejudiced by his attorney's alleged deficiency.

The petitioner further complains that trial counsel did not contact witnesses who would have testified as to the victim's drunken state on the afternoon of the shooting. However, these witnesses were not called to testify at the post-conviction hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).  Without the testimony of these proposed witnesses, this Court is left to speculate as to what their testimony would have been.  Because the petitioner did not present these witnesses at the post-conviction hearing, he cannot demonstrate how he was prejudiced by his attorney's failure to discover these witnesses and/or call them to testify.

This issue has no merit.


**III.**


The petitioner has not established that his attorney provided deficient performance at trial or on appeal.  Moreover, he has not demonstrated a reasonable probability that, due to his attorney's alleged deficiencies, the result of the proceeding would have been different.  Accordingly, the trial court properly denied the petition for post-conviction relief.  The trial court's judgment is affirmed.


_____
JERRY L. SMITH, JUDGE


CONCUR:

_____
DAVID G. HAYES, JUDGE


_____
NORMA MCGEE OGLE, JUDGE